# 23-7332-cv

## United States Court of Appeals

*for the*

## Second Circuit

ALI MOHAMAD MOUSSAOUI,

*Plaintiff-Appellant*,

ABC,

*Plaintiff,*

– v. –

BANK OF BEIRUT AND THE ARAB COUNTRIES, also known
as BBAC Bank S.A.L., ASSAF HOLDING COMPANY SAL,

*Defendants-Appellees*,

DEF, J.P. MORGAN CHASE BANK N.A., CITIBANK N.A.,

*Defendants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF AND SPECIAL APPENDIX
## FOR PLAINTIFF-APPELLANT

PETER E. SVERD
THE LAW OFFICES OF PETER SVERD, PLLC
*Attorneys for Plaintiff-Appellant*
225 Broadway, Suite 613
New York, New York 10007
(646) 776-2668

CP COUNSEL PRESS · (800) 4-APPEAL • (325742)

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Procedure 26.1(a), Plaintiff-Appellant Ali Mohamad Moussaoui respectfully submits this Corporate Disclosure Statement. Plaintiff and appellant Ali Mohamad Moussaoui is a natural person that has no parent corporation, and no publicly-held corporation owns 10 percent or more of its stock.

*/s/ Peter Sverd*
Peter Sverd
*Attorney for Plaintiff-Appellant*

Date: January 18, 2024

i

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................... iii

JURISDICTIONAL STATEMENT .............................................................1

PRELIMINARY STATEMENT……………………………………………...1

ISSUES PRESENTED FOR REVIEW ...................................................2

STATEMENT OF THE CASE ................................................................2

    A. NATURE OF THE CASE ..............................................................2

    B. STATEMENT OF FACTS……………………………………………3

    C. THE COURSE OF PROCEEDINGS AND DISPOSITION BELOW..9

SUMMARY OF THE ARGUMENT ......................................................11

STANDARD OF REVIEW……………….....…………………………12

ARGUMENT .......................................................................................15

I.     THE DISTRICT COURT INCORRECTLY GRANTED
       DEFENDANTS' MOTION TO DISMISS.....................................15

    A. The District Court Incorrectly Found the Defendants Are Not Subject
       to New York Jurisdiction…………………………………………15

    B. If *Forum Non Conviens* Was a Ground for the District Court's
       Dismissal, the Court Erred and Abused Its Discretion..……………20

    C. Alternatively, rather than Entering a Judgment of Dismissal the Lower
       Court Should Have Granted Plaintiff's Request for Jurisdictional
       Discovery……………………………………….……………………23

II.    ALTERNATIVELY, THE DISTRICT COURT ERRED IN
      DISMISSING THE PRESENT MATTER "WITH PREJUDICE."…25

III.   PLAINTIFF SHOULD HAVE BEEN GRANTED PRE-JUDGMENT
      ATTACHMENT……………………………………..……………27

CONCLUSION……………………………………………………….30

CERTIFICATE OF COMPLIANCE WITH FRAP RULE 32(a)(7), FRAP
RULE 32(g) and CR 32(c)…………………………………………….31

# TABLE OF AUTHORITIES

## Cases

*A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993 ....................13

*Am. Realty Tr., Inc. v. Hamilton Lane Advisors, Inc., 115 F. App'x 662, 666–67(5th Cir. 2004)*................................................................................................**26**

*Arch Trading Corp. v. Republic of Ecuador, 839 F.3d 193, 206 (2d Cir. 2016)* ......14

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999) ................................................................................................12

*Bartlett v. Société Générale de Banque Au Liban SAL*, No. 19 Civ. 7, 2020 WL 7089448, at \*5 (E.D.N.Y. Nov. 25, 2020)............................................................18

*Best Van Lines, Inc. v. Walker, 490 F.3d 239, 240 (2d Cir.2007)* .........................16

*Buccellati Holding Italia SPA v. Laura Buccellati, LLC, 935 F. Supp. 2d 615, 621– 22 (S.D.N.Y. 2013)*................................................................................16

*Cap. Ventures Int'l v. Republic of Argentina (Cap. Ventures II), 652 F.3d 266, 270 (2d Cir. 2011)* ........................................................................................27

*Carey v. Bayerische Hypo-und Vereinsbank AG, 370 F.3d 234, 237 (2d Cir 2004)* ................................................................................................14, 20

*Chufen Chen v. Dunkin' Brands, Inc., 954 F.3d 492, 497 (2d Cir. 2020)* ...............14

*Correspondent Services Corp. v. J.V.W. Investments Ltd., 120 F.Supp2d 401 (S.D.N.Y. 2000* .................................................................................... 18

*Dale v. Banque SCS Alliance S.A.*, No. 02 Civ. 3592, 2005 WL 2347853 (S.D.N.Y. Sept. 22, 2005) ................................................................................17

*Daou v. BLC Bank, S.A.L.* 42 F.4th 120 (2nd Cir. 2022)…….................……16, 17,19

*Darby Trading Inc. v. Shell Int'l Trading and Shipping Co.*, 568 F.Supp.2d 329, 334 (S.D.N.Y. 2008) ................................................................................13

*Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d Cir, 2013).......13

*Elfenbein v. Gulf & Western Indus., Inc.*, 590 F.2d 445, 449 (2d Cir.1978) ..........25

*EM Ltd. v. Republic of Argentina*, 131 F. App'x 745, 747 (2d Cir. 2005) ..............14

*Euro-Pro Operating LLC v. Euroflex Americas*, 2008 WL 5137060 12 (S.D.N.Y. 2008) ................................................................................24

*Frederiksen v. City of Lockport*, 384 F.3d 437(7th Cir. 2004) ..............................26

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947) .................................................21

*In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 207–08 (2d Cir.2003) ...24

*Iragorri v. United Techs. Corp.*, 274 F.3d 65, 73 (2d Cir. 2001) ...........................21

*Jazini v. Nissan Motor Co.*, 148 F.3d 181, 184 (2d Cir. 1998) ...............................13

*Lauderdale-El v. Indiana Parole Bd.*, 35 F.4th 572, 576–77 (7th Cir. 2022).........25

*Leviton Mfg. Co. v. Reeve*, 942 F. Supp. 2d 244, 273 (E.D.N.Y. 2013), amended (Mar. 23, 2013) ................................................................................26

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL* 673 F.3d 50, 62 (2d Cir 2012) ................................................................................18

iv

*Licci v. Lebanese Canadian Bank, SAL*, 20 N.Y.3d 327 (2012)…………16, 17, 18

*Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996)................................................................................................ 12

*Nike, Inc. v. Wu, 349 F. Supp. 3d 346, 356 (S.D.N.Y. 2018)*..................................18

*Norex Petroleum Ltd. v. Access Indus., Inc., 416 F.3d 146, 153 (2d Cir. 2005)* ..............................................................................................21, 22

*Phoenix Consulting, Inc. v. Republic of Angola, 216 F.3d 36, 40 (D.C.Cir.2000)*.24

*Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255 (1981)*.........................................21

*Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008) .....................13

*Ruiz v. Snohomish Cnty. Pub. Util. Dist. No. 1, 824 F.3d 1161, 1164 (9th Cir. 2016)* ............................................................................................26

*Scottish Air Int'l, Inc. v. British Caledonian Grp., PLC*, 81 F.3d 1224, 1232 (2d Cir. 1996)...................................................................................20

*Smith v. United States, 554 F. App'x 30, 32 (2d Cir. 2013)* ...................................25

*Texas Int'l Magnetics, Inc. v. BASF, 31 F. App'x 738 (2d Cir. 2002)* ....................24

*Thackurdeen v. Duke Univ.*, 130 F.Supp.3d 792, 798 (S.D.NY. 2015)...................13

*Togut v. Forever 21, Inc., 285 F.Supp.3d 643 (S.D.N.Y. 2018)* ............................23

*VisionChina Media Inc. v. Shareholder Representative Services, LLC, 109 A.D.3d 49 (1st Dep't 2013)* ..............................................................................27

v

*Wilson & Wilson Holdings LLC v. DTH, LLC*, --- F.Supp.3d ---- (S.D.N.Y. May 15, 2023), 2023 WL 3449163 .......................................................................24

**Statutes**

*28 U.S.C. § 1291* ......................................................................................1

*28 U.S.C. § 1332* ......................................................................................1

**Rules**

*Fed. R. Civ. P.*

*12(b)(2)*……………………………………………………………....1, 2, 3,12

*Fed. R. Civ. P. 41*......................................................................................25,26

*Fed. R. Civ. P. 64* ......................................................................................27

*N.Y.C.P.L.R. § 302(a)(1)*…………………………………….....2,15,16,17, 18

*N.Y.C.P.L.R. 6201*……………………………………………….14, 27

**Treatises**

*35B C.J.S. Federal Civil Procedure § 844* ...........................................25

## JURISDICTIONAL STATEMENT

The District Court has subject matter jurisdiction under diversity jurisdiction pursuant to *28 U.S.C. § 1332*. The matter in controversy exceeds $75,000. The plaintiff is a resident of the State of Texas, and both defendants are citizens of the Republic of Lebanon.

This Court has jurisdiction of this appeal pursuant to *28 U.S.C. § 1291* as the District Court's order of dismissal with prejudice dated September 14, 2023 is a final order terminating the proceedings (SPA 1-16[1]). Plaintiff and appellant, Ali Mohamad Moussaoui, filed a timely notice of appeal on October 9, 2023 (A 711-729).

## PRELIMINARY STATEMENT

Plaintiff, and appellant Ali Mohamad Moussaoui appeals from the Opinion and Order (SPA 1-16) entered by the United States District Court for the Southern District of New York (Edgar Ramos, U.S.D.J.) on September 14, 2023, under *Fed. R. Civ. P. 12(b)(2)*, dismissing this matter **with** prejudice for lack of personal jurisdiction, in favor of defendants and appellees, Bank of Beirut and the Arab Countries, also known as BBAC Bank S.A.L. (hereinafter "BBAC"), and Assaf Holding Company SAL (hereinafter "Assaf").

---

[1] The Appendix filed by the parties in this matter will be cited as "A ___", other than the portion of the Appendix containing a copy of the Opinion and Order of the District Court being appealed which is cited as "SPA ___".

## ISSUES PRESENTED FOR REVIEW

A. Whether the District Court below erred when, based on *Fed. R. Civ. P. 12(b)(2)*, it dismissed the plaintiff's First Amended Complaint for lack of personal jurisdiction under New York's long arm statute, *N.Y.C.P.L.R. §302(a)(1)*?

B. Did the District Court below err by dismissing the First Amended Complaint **with** prejudice?

C. Whether the court below erred when it denied Plaintiff's request for attachment over the United States Currency (USD) in BBAC's correspondent New York bank accounts?

## STATEMENT OF THE CASE

### A. The Nature of the Case

Plaintiff and appellant Ali Mohamad Moussaoui sought recovery against BBAC a Lebanese financial institution, asserting that since February 2020, BBAC used its correspondent bank accounts in New York City as the principal mechanism to enrich its shareholder ASSAF, preferred customers, and corporate insiders by stealing and using Plaintiff's (and BBAC's) United States Dollars ("USD"), while the bank remained insolvent (A-16 to 18). In support of this action, the plaintiff filed an ex parte motion for attachment which was denied (A-3).

BBAC and Assaf brought a motion to dismiss under *Fed. R. Civ. P. Rule 12(b)(2)*, asserting lack of personal jurisdiction (A 58, 59). The District Court below

granted the *Rule 12(b)(2)* motion and dismissed the plaintiff's complaint with prejudice (SPA 1-16).

## B. Statement of the Facts

Dr. Ali Mohamad Moussaoui is an American citizen who has lived mostly in the United States since 1991 (A-406). He is a resident of Texas (*id*). He is also a citizen of Lebanon (*id*). From 2012 to 2015, Dr. Moussaoui and his family resided in Lebanon where he worked part time doing pro bono work; this is the only time since 1991 that he lived in Lebanon (*id*).

In 2012, Dr. Moussaoui established a Fixed Term Savings Account ("FTSA") in Lebanon in USD at BBAC, by depositing $3,250,000 USD (A-144), and BBAC issued Dr. Moussaoui an FTSA Passbook, which contained its own terms and conditions (A-408, 409). At all times, Dr. Moussaoui's term investment account at BBAC was held under a separate and identifiable account, ending in number: 6110 ("Account"), with a "customer ID" at the bank ending in 276 (A-409).

Pursuant to the express terms of Dr. Moussaoui's FTSA, his USD investment was to be closed, liquidated, and his USD returned to him if he informed BBAC of his intention to withdraw the investment at least 3 business days before the maturity" (A-20 to 22, 409; and Moussaoui passbook, A433 to 436).

Specifically, the FTSA Passbook contains the following language:

> Every invested amount that matures will be renewed automatically for the same time period with an interest rate that

3

> is decided by the bank and this is only if the depositor does not inform the bank about his intention to withdraw the investment at least 3 business days before the maturity.

(A-409).

FTSA Passbook terms are binding upon BBAC as "[t]ransfers while common in international banking transactions, are subject nevertheless to the agreement of the parties" (A-177). The FTSA Passbook is one such agreement of the parties that is enforceable.

To attract investments from individuals like plaintiff, BBAC specifically marketed, its correspondent banking relationship with JP Morgan Chase Bank, and CitiBank, U.S.A. City of New York (A-408, 431). There are hundreds of cities in the United States that BBAC could have identified and chosen to set up correspondent banking relationships with, but BBAC purposefully and knowingly selected New York City as the place to set up its correspondent bank accounts. BBAC selected New York City as the place to conduct its banking activities because of New York's dependable and transparent banking system, and predictable jurisdictional and commercial law of New York and the United States (A-14 to 15, 408).

BBAC maintains these correspondent bank accounts[2] (A-408), to have access to foreign currencies and facilitate transactions in foreign currencies for its customers. BBAC's international USD interbank payments are cleared through banks located in the United States, mostly in New York (A-143, 144).

Between 2015 and January 1, 2019, BBAC used New York banks to transfer USD to plaintiff on 18 separate occasions, and plaintiff used New York banks to transfer USD to BBAC on 13 separate occasions (A-21).

In February 2020- more than three days before the March 11, 2020 maturity of the 2020 term of his FTSA, Dr Moussaoui, notified BBAC and directed that his 2020 term deposit be closed and not renewed upon maturity (A-409). BBAC ignored Dr. Moussaoui's notice, refused to close his FTSA upon maturity, and refused to wire his USD to his Chase Account in the US, as per his instructions (A-409, 410). Instead, on March 11, 2020, BBAC, in effect, stole Dr. Moussaoui's USD and without consent or permission renewed his FTSA for a fixed term (A-144).

BBAC uses the volatile political situation in Lebanon as an excuse for the conversion of Dr. Moussaoui's funds (A-145). However, there was no law in effect

---

[2]"The international banking system relies on freely accessible correspondent banking services provided by multinational financial institutions based in New York.... International transfers of USD must be made through a U.S. correspondent account. In other words, all USD transactions must clear through a U.S. bank account." *See Iraq Telecom v. IBL Bank SAL, 2022 WL 827094 (SDNY 2022)(*affirmed in part, vacated in part, remanded by *Iraq Telecom Limited v. IBL BANK S.A.L. 43 F.4th 263 (2d Cir. 2022)*.

on March 11, 2020, giving BBAC the right to unilaterally breach the FTSA, and keep Dr. Moussaoui's money. The Central Bank of Lebanon did not restrict the withdrawals and transfer of foreign currencies (USD) to customers abroad until April 21, 2020, when the Central Bank of Lebanon issued Basic Circular No. 151 (A-211 to 213; 410; 439, 440). Basic Circular 151 allows each depositor with foreign currency accounts exceeding $3,000 in value, to withdraw cash in Lebanese lira at market rate on the condition that the withdrawals do not exceed $5,000 per month (*id*). But for BBAC's conversion of Dr. Moussaoui's FTSA on March 11, 2020, Basic Circular 151 issued on April 21st would not have impeded BBAC wiring Dr. Moussaoui's $4,522,502.21 USD (A-410, 411).

Plaintiff alleges that since February 2020, BBAC used its correspondent accounts in New York City as the principal mechanism to enrich its shareholder (Assaf), preferred customers, and corporate insiders by stealing and using plaintiff's (and BBAC's) USD, while BBAC was insolvent (A-16 to 18).

BBAC is insolvent and, as of August 2020, required approximately $2.2 billion in fresh USD to support its balance sheet in accordance with international norms[3] (A-16, 17, 185, 186, 206). Per BBAC's 2019 publicly audited Annual Financial Report, it held 7.46%, or $336,000,000 USD, of customer deposits in cash

---

[3] See *Crisis in Lebanon, Anatomy of a Financial Collapse," James Rickards, August 2020 (*A portion of which is located at A-193 to 239; *See,* A- 185 to 187).

and liquidity (A-454) in its correspondent accounts in New York City (A-593), and other banks. Term deposit accounts accounted for 74.76% of BBAC's total deposits, of which 72% were denominated in USD (A-453). BBAC has not published a Financial Report- let alone a publicly audited Annual Financial Report for the fiscal years ending December 31, 2020, and December 31, 2021(A-17).

Assaf does not deny that it is a direct beneficiary, benefactor and stakeholder in BBAC or its subsidiaries, the Capital for Insurance and Reinsurance Company S.A.L., Informatic Co. S.A.R.L., and Societe Libanaise, de Service S.A.R.L. (A-25, 255). In fact, as indicated on its 2019 audit report, BBAC is controlled by Assaf (A-388).

According to BBAC's 2019 Public Audited Financial Statement in 2018, BBAC loaned and advanced 12,058 million Lebanese lira ("LL") to Directors and other key management personnel (and close family members) and earned interest in the sum of 491 LL million from this class of individuals (A-388). According to BBAC's 2019 Public Audited Financial Statement in 2019, despite being insolvent, BBAC loaned and advanced 5,870 LL million to Directors and other key management personnel (and close family members) and earned interest in the sum of 640 LL million from this class of individuals (A-388).

The auditors were not able to provide a "Going Concern Assessment of BBAC" as part of the 2019 due in part to the BBAC's failure to provide sufficient

disclosures pertaining to going concern, liquidity risk, credit risk, solvency and capital management risk in the financial statements (A-188, A-285).

BBAC does not refute that the above practices continued in FY 2020 and 2021, as it made loans or advanced, USD through its New York correspondent bank accounts to its directors and other key management personnel and close family members (A-18, 31, 32).

BBAC's representative in the present lawsuit, Mr. Nadim Hamadeh, did not deny that BBAC has Dr. Moussaoui's $4,522,502.21 USD secured in its correspondent account(s) in New York, New York. Nor did he deny that BBAC has at least $4,522,502.21 USD in its correspondent accounts in New York (*id*). Furthermore, Mr. Hamadeh did not claim that BBAC has adequate liquid USD in its possession and control to satisfy the $4,522,502.21 USD judgment to which Plaintiff is entitled (*id,* and A-142 to 146, 407).

Dr. Moussaoui did not enter a choice of forum clause mandating that all disputes pertaining to the subject Fixed Term Savings Account be resolved in the courts of Lebanon (A 148 to 155). Paragraph 29 of the alleged Agreement does not contain mandatory words such as "shall" or "must" be resolved in Beirut Courts (A-415). In any event, BBAC incorrectly asserts that the forum selection clause contained in the"General Rules of Dealing with the Bank" likely governed his checking account opened in 2012, and does not apply to the FTSA (A-414, 415).

Dr. Moussaoui filed an action (the "Lebanese action") in the "Next Court of First Instance" in Beirut, Lebanon, against both defendants, on January 11, 2022 (A-26). He sought damages for conversion and breach of Lebanon's banking laws. (*id*). In that case, Dr. Moussaoui requested that the court seize the defendants' assets through precautionary attachment (A-26). The Lebanese court issued an order directing Moussaoui to clarify the property owned by BBAC (A-27). Although the Lebanese action is pending (A-27), defendants did not file a response with the court in Lebanon, and the judge in Lebanon has not replied to Dr. Moussaoui's request to schedule a hearing (A-412). Since May 2022, judges in Lebanon have been refusing to handle cases filed against Lebanon's banks *(id)*.[4]

## C. The Course of Proceedings and Disposition Below

The instant complaint was initially filed under seal on July 14, 2022. On August 16, 2022, Moussaoui filed a motion for an *ex parte* pre-judgment order of attachment. The District Court held a telephonic conference the same day, (A-3), and denied the motion. The District Court concluded that it was unclear whether Dr.

---

[4] See e.g., *López-Tomàs,* TheMediaLine, *Lebanon's Judiciary Languishes Due to Lack of Independence 01/19/2023* https://themedialine.org/by-region/lebanons-judiciary-languishes-due-to-lack-of-independence/ ("'Justice in Lebanon is going nowhere. The proceedings have been totally sabotaged and they are totally suspended, so we have to find inventive ways to circumvent the judiciary in Lebanon,' (Attorney)Wakim told The Media Line.")

Moussaoui was entitled to a money judgment from the defendants, and attachment was otherwise not necessary (A-63 to 72).

Additionally, on August 16, 2022, Plaintiff's Summons and Complaint, previously filed under seal, were unsealed. Assaf and BBAC were served on September 28, 2022.

During a telephonic pre-motion conference held before Judge Edgardo Ramos on November 3, 2022, Plaintiff was granted leave to file an amended complaint and the Defendants were granted leave to file a motion to dismiss. On November 7, 2022, Plaintiff filed his amended complaint adding ‚J.P. Morgan Chase Bank, N.A., and Citibank, N.A. as defendants. On December 8, 2022, Assaf and BBAC filed their motion to dismiss the amended complaint, on several grounds including lack of personal jurisdiction and *forum non conviens*.

On March 31, 2023, plaintiff filed a Notice of Voluntary Dismissal pursuant to Rule 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure, as to Citibank NA, and J.P. Morgan Chase Bank N.A because plaintiff received the requested disclosure from them evidencing BBAC's accounts. The dismissal was entered on April 3, 2023.

On September 14, 2023, finding a lack of personal jurisdiction, the Court granted the defendants' motion to dismiss with prejudice. It is unclear whether the District Court ruled on the *forum non conviens* aspect of defendants' motion. The

Court did not reach the merits of the claims. The Plaintiff timely appealed this order of dismissal (SPA 1-16).

## SUMMARY OF THE ARGUMENT

The District Court erred in granting the *Rule 12(b)(2)* motion to dismiss for lack of personal jurisdiction brought by Assaf and BBAC. In particular, because plaintiff alleges that since February 2020, BBAC used its correspondent accounts in New York City as the principal mechanism to enrich its shareholder (Assaf), preferred customers, and corporate insiders by stealing and using plaintiff's (and BBAC's) USD, while BBAC was insolvent, plaintiff's claims arose from defendants' transaction of business in New York.

As this Court has *de novo* review over the *Rule 12(b)(2)* motion, it can correct this error. As alternative arguments, plaintiff asserts the District Court had absolutely no basis to enter this dismissal, which was on procedural grounds, with prejudice and abused its discretion in not granting jurisdictional discovery.

If *Forum Non Conviens* was a ground for the District Court's dismissal, the Court erred by failing to hold the forum selection clause was permissive. The Court otherwise abused its discretion by failing "to consider all the relevant factors or unreasonably balances those factors" and ignoring the "strong presumption in favor of the plaintiff's choice of forum." The plaintiff, Dr. Moussaoui, is an American citizen who has resided in the United States for 28 of the last 32 years. He

has been deprived of over $ 4.5 million by the wrongful activities of Lebanese financial institutions, who have been funneling money and are holding his money, in banks in New York City. Justice is unattainable in Lebanon. Accordingly, Ali Mohamad Moussaoui, seeks reversal of the District Court's order and denial of defendants' *Rule 12(b)(2)* motion to dismiss.

Additionally, Plaintiff is seeking a reversal of the District Court's refusal to grant an attachment of BBAC's New York based bank accounts. The defendants are foreign business entities, not authorized to conduct business in New York. It is crystal clear that they owe Dr. Moussaoui over $4.5 million from his account. It is equally clear, based upon the above, that there is extremely likely, that unless Plaintiff is allowed to attach defendants' New York assets, defendants will lack the assets needed to satisfy a judgment in favor of plaintiff. The issues here are so stark, that the Court's failure to grant attachment was an abuse of discretion. Consequently, the lower Court erred in failing to grant plaintiff an order for attachment.

## STANDARD OF REVIEW

On a *Rule 12(b)(2)* motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999); *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560,

566 (2d Cir. 1996). Prior to discovery, a party challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith legally sufficient allegations of jurisdiction, *i.e.*, by making a *prima facie* showing of jurisdiction. *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 184 (2d Cir. 1998).

While a court may consider materials beyond the pleadings, the court must credit a party's allegations in support of jurisdiction. *See A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993); *see also Darby Trading Inc. v. Shell Int'l Trading and Shipping Co.*, 568 F.Supp.2d 329, 334 (S.D.N.Y. 2008) (noting that these motions are inherently matters requiring resolution of factual issues outside the pleadings allowing courts to rely on additional materials).

At the early stage of the litigation (prior to discovery), a court must construe the pleadings and any supporting materials in the light most favorable to the plaintiffs, resolving any doubts in favor of jurisdiction. *See Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d Cir, 2013); *Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008). However, a plaintiff may not rely on conclusory statements without any supporting facts as such allegations would lack the factual specificity necessary to confer jurisdiction. *Jazini*, 148 F.3d at 185. A court does not draw argumentative inferences in plaintiff's favor nor does it accept as true a legal conclusion couched as a factual allegation. *Thackurdeen v. Duke Univ.*, 130 F.Supp.3d 792, 798 (S.D.NY. 2015) (citations omitted).

The Second Circuit reviews a district court's dismissal for lack of personal jurisdiction *de novo* "construing all pleadings and affidavits in the light most favorable to the plaintiff." *Chufen Chen v. Dunkin' Brands, Inc., 954 F.3d 492, 497 (2d Cir. 2020)* (internal quotation marks and citations omitted). The Second Circuit reviews "a district court's denial of jurisdictional discovery for abuse of discretion." *Arch Trading Corp. v. Republic of Ecuador, 839 F.3d 193, 206 (2d Cir. 2016).*

A dismissal based on *forum non conveniens* is reviewed deferentially for abuse of discretion. *Carey v. Bayerische Hypo–Und Vereinsbank AG, 370 F.3d 234, 237 (2d Cir.2004).* A district court abuses its discretion in granting a *forum non conveniens* dismissal when its decision "(1) rests either on an error of law or on a clearly erroneous finding of fact, or (2) cannot be located within the range of permissible decisions, or (3) fails to consider all the relevant factors or unreasonably balances those factors." *Norex Petroleum Ltd. v. Access Indus., Inc., 416 F.3d 146, 153 (2d Cir. 2005) (citations omitted).*

Likewise, issues involving attachment are reviewed for abuse of discretion. *See EM Ltd. v. Republic of Argentina, 131 F. App'x 745, 747 (2d Cir. 2005)* ("*N.Y. C.P.L.R. § 6201* specifies the circumstances under which an attachment "may" be issued. The applicable state law procedures are (thus) discretionary remedies").

# ARGUMENT

## POINT I

## THE DISTRICT COURT INCORRECTLY GRANTED DEFENDANTS' MOTION TO DISMISS.

### A. The District Court Incorrectly Found the Defendants Are Not Subject to New York Jurisdiction.

The District Court incorrectly determined that plaintiff failed to make the requisite showing needed to establish long arm jurisdiction under New York law (SPA-10). Although it was "clear that the defendants maintained accounts in New York, ...and BBAC specifically held its correspondent accounts to facilitate the foreign transactions of its customers", the lower Court found the record did not demonstrate "the defendants consistently or systematically transacted business in New York" (SPA-10). Additionally, according to the District Court, plaintiff's claims did "not arise out of any *specific* transaction or business activity conducted by the defendants in New York" (SPA-10). However, the facts alleged in the amended complaint, coupled with the affidavits and supporting materials, submitted in opposition to BBAC and ASSAF's motion, were more than sufficient to make a *prima facie* showing of long arm *in personam* jurisdiction under New York Law. *C.P.L.R. § 302(a)(1)*. Defendants' motion to dismiss should have been denied.

BBAC transacted business within New York and Dr. Moussaoui's causes of action arose from these transactions in which the defendant deposited and transferred USD, funneling the USD to Assaf and others in violation of plaintiff's rights.

Section 302(a)(1) of the C.P.L.R. is a "single act statute" and proof of one transaction in New York is sufficient to invoke jurisdiction even if a defendant never physically enters New York, so long as the defendant's New York activities were purposeful and there is a substantial relationship between the transaction and the claim asserted. *See Daou v. BLC Bank, S.A.L. 42 F.4th 120 (2nd Cir. 2022).*

Even in the absence of the systematic presence needed for "doing business" jurisdiction, a plaintiff may properly assert specific jurisdiction based on its "transacting business" in New York—*i.e.,* where a defendant, itself "'or through an agent ... transacts any business within the state, so long as the plaintiff's 'cause of action aris[es] from' that 'transact[ion].'" See *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 673 F.3d 50, 60 (2d Cir.2012)*; *Best Van Lines, Inc. v. Walker, 490 F.3d 239, 240 (2d Cir.2007).* A single sale is enough for a company to have availed itself of New York's laws. *See Buccellati Holding Italia SPA v. Laura Buccellati, LLC, 935 F. Supp. 2d 615, 621–22 (S.D.N.Y. 2013)* ("A single act within New York will, in the proper case, satisfy the requirements of *section 302(a)(1).*") quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL 673 F.3d 50, 62 (2d Cir 2012).*

Under the "relatively permissive" 'arising from the transaction' prong, the defendant's use of the correspondent bank account need not be at the "very root" of the plaintiff's claim. *See Licci III*, 20 N.Y.3d at 339–41 (stating jurisdiction lies "over those claims in some way ***arguably*** connected to the transaction [of business in New York]" (emphasis added)). Rather, if the use of the correspondent bank account is not "completely unmoored" from one of the elements of a plaintiff's cause of action, the "arising from the transaction" prong is satisfied. *Id. at 340.* The Second Circuit in *Daou, 42 F.4th at 130* explained that the:

> second prong of the jurisdictional inquiry" under *§ 302(a)(1)* "require[s] that, in light of all the circumstances, there must be an 'articulable nexus' or 'substantial relationship between the business transaction and the claim asserted.... In effect, the 'arising from' prong limits the broader 'transaction-of-business' prong to confer jurisdiction only over those claims in some way ***arguably*** connected to the transaction (internal citations omitted) (emphasis added).

The harm alleged by Dr. Moussaoui "arises from" BBAC's transferring USD which was kept in New York City correspondent bank accounts to BBAC insiders, including its majority owner, Assaf, while BBAC was and continues to be insolvent. Dr. Moussaoui's case is akin to those where foreign banks transact in USD by means of their New York correspondent accounts to commit wrongs. For example, the Southern District of New York found personal jurisdiction over foreign banks where the banks used their correspondent bank accounts to launder money. *Dale v. Banque*

*SCS Alliance S.A., No. 02 Civ. 3592, 2005 WL 2347853 (S.D.N.Y. Sept. 22, 2005)*;
*see also, Correspondent Services Corp. v. J.V.W. Investments Ltd., 120 F.Supp2d
401 (S.D.N.Y. 2000)*( Bahamian bank transacted business within New York by single
act of transferring foreign investment firm's deposited funds to New York, and
tortiously converting the same funds, so as to bring bank within long arm jurisdiction
of New York's courts); *See also, Nike, Inc. v. Wu, 349 F. Supp. 3d 346, 356 (S.D.N.Y.
2018)* (transfer of sales proceeds from alleged trademark infringement through
correspondent accounts "on hundreds of occasions to the tune of millions of dollars"
sufficient for personal jurisdiction).

Additionally, in a series of terrorism-financing cases, courts in New York
have concluded that jurisdiction lies over banks that executed funds transfers in New
York, through their New York branches to fund terror organizations. *See* e.g. *Bartlett
v. Société Générale de Banque Au Liban SAL, No. 19 Civ. 7, 2020 WL 7089448, at
\*5 (E.D.N.Y. Nov. 25, 2020)*; and *Licci v. Lebanese Canadian Bank, SAL, 20 N.Y.3d
327, 339 (2012)* (a foreign bank's use of a New York correspondent account to
execute dozens of wire transfers is sufficiently purposeful conduct to constitute a
"transaction of business" within the meaning of CPLR § 302(a)(1)); *See King v.
Habib Bank Limited, 2022 WL 4537849, at p. 3 (S.D.N.Y. 2022)*(Bank transacted
business pursuant to §302(a)(1), where sufficient facts were alleged to infer that
defendant used its New York branch -- and hence New York's banking system -- "as

an instrument to achieve the very wrong alleged," that is, "to further [al-Qaeda's] terrorist goals").

In the present matter, the District Court mistakenly interpreted the *Daou* opinion as requiring dismissal (SPA-10, 11). The case at bar is distinguishable from *Daou*, where personal jurisdiction was found to be lacking because the claim arose out of a Lebanese Bank's *failure* to carry out transactions in New York[5] that were requested by *Daou*. This Court reasoned, "The FAC ...does not include a single allegation that any defendant used an actual, specific transaction through a New York correspondent account in the course of bringing about the injuries on which the claims are predicated – namely, that **the Daous' USD remained in Lebanon**." *Daou,* 42 F.4th at 132.

The jurisdictional facts in the present matter are much closer to those presented in *King v. Habib Bank Limited*, supra, where the selection and repeated use of New York's banking system, were an instrument for accomplishing the alleged wrongs for which the plaintiffs sought redress, constituted purposeful

---

[5] The Second Circuit Court denied personal jurisdiction where "the alleged unlawful conduct underlying the Daous' claim d[id] not involve a specific transaction through New York correspondent accounts-rather, the Daous allege that the Commercial Banks have used their New York correspondent accounts to handle the Daous' and other investors' money *in the past* and likely would have done so if, counterfactually, they had transferred the Daous' money to the United States as promised."

availment sufficient for the court to find personal jurisdiction over the defendants. *id.*

The harm alleged by Dr. Moussaoui in the present matter arises from BBAC's purposeful depleting of its supply of its finite USD through its New York correspondent banks for the benefit of insiders in violation of Dr. Moussaoui's rights. Obviously, plaintiff's claims are at the very least, "in some way arguably connected to" BBAC and Assaf's transaction of business in New York." Consequently, the lower Court erred when it found it had no personal jurisdiction over the defendants in this case.

**B.** **If *Forum Non Conviens* Was a Ground for the District Court's Dismissal, the Court Erred and Abused Its Discretion.**

In the present matter, the District Court found the defendants' arguments that New York was an improper forum for this case were compelling. However, it is not clear whether the District Court ruled on forum non conviens grounds. ("[B]ecause the Court concludes here that it cannot exercise personal jurisdiction over these defendants, it need not decide whether the [disputed forum selection] clause governs here"). If the Court ruled in favor of a forum non conviens dismissal, it abused its discretion.

In appropriate situations, *forum non conveniens* enables a court to dismiss a matter although "the court is a permissible venue with proper jurisdiction over the claim." *Carey v. Bayerische Hypo-und Vereinsbank AG*, 370 F.3d 234, 237 (2d Cir.

*2004).* Whether or not to dismiss a claim based on this doctrine lies within the

discretion of the court. *Scottish Air Int'l, Inc. v. British Caledonian Grp., PLC*, 81

F.3d 1224, 1232 (2d Cir. 1996).

When adjudicating a forum non conveniens motion, courts within the Second

Circuit are guided by "a three-step process." *Iragorri v. United Techs. Corp.,* 274

F.3d 65, 73 (2d Cir. 2001) (en banc).

> At step one, a court determines the degree of deference properly
> accorded the plaintiff's choice of forum.... At step two, it
> considers whether the alternative forum proposed by the
> defendants is adequate to adjudicate the parties' dispute....
> Finally, at step three, a court balances the private and public
> interests implicated in the choice of forum.
> *Norex Petroleum Ltd. v. Access Indus., Inc.,* 416 F.3d 146, 153 (2d Cir. 2005)

*(citations omitted).*

A review of a motion to dismiss based on *forum non conveniens* must apply

"a strong presumption in favor of the plaintiff's choice of forum." *Piper Aircraft Co.*

*v. Reyno, 454 U.S. 235, 255 (1981).* "[U]nless the balance is strongly in favor of the

defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp.*

*v. Gilbert, 330 U.S. 501, 508 (1947).* As stated supra, among the reasons a reviewing

court may determine that a district court abused its discretion in granting a forum

non conveniens dismissal is when the district court failed "to consider all the relevant

factors or unreasonably balances those factors." *Norex Petroleum Ltd. 416 F.3d at*

*153.*

As indicated above, the plaintiff is an American citizen and Texas resident who, except from 2012 to 2015, has lived in the United States since 1991 (A-406). Plaintiff is also a citizen of Lebanon (*id*). From 2012 to 2015, Dr. Massaoui and his family resided in Lebanon where he worked part time doing pro bono work; this is the only time since 1991 that he lived in Lebanon (*id*). Although Dr. Moussaoui filed an action in Beirut, (A-26) and the Lebanese court issued an order directing Moussaoui to clarify the property owned by BBAC (A-27), the Lebanese Judicial system has deteriorated to the point of becoming, for the most part, inoperative. In plaintiff's Lebanese action, the defendants have failed to respond since suit was initiated two years ago and the judge in Lebanon assigned to the matter has not replied to Dr. Moussaoui's request to schedule a hearing (A-412). Judges have been striking and as noted above, since May 2022, judges in Lebanon have been refusing to handle cases filed against Lebanon's banks. In sum, unfortunately, at the present time justice is unattainable in Lebanon.

In the present case, (if the Court below did in fact base its ruling on forum non conviens grounds), the District Court abused its discretion by failing "to consider all the relevant factors or unreasonably balances those factors," *Norex Petroleum Ltd. 416 F.3d at 153,* and ignoring the "strong presumption in favor of the plaintiff's choice of forum." *Piper Aircraft Co., 454 U.S. at 255.* The plaintiff, Dr. Moussaoui, is an American citizen who has resided in the United States for 28

of the last 32 years. He has been deprived of approximately $ 4 million by the wrongful activities of Lebanese financial institutions, who have been funneling money and are holding his money, in banks in New York City. Justice is unattainable in Lebanon. Clearly, Dr. Moussaoui should be allowed to pursue his rights in courts located in the State of New York.

### C. Alternatively, rather than Entering a Judgment of Dismissal the Lower Court Should Have Granted Plaintiff's Request for Jurisdictional Discovery.

The District Court should have granted leave to Dr. Moussaoui to conduct jurisdictional discovery prior to entering a judgment of dismissal. BBAC and Assaf are in sole possession of bank records and documents necessary for plaintiff to further establish that they frequently, systematically, and intentionally use their correspondent accounts in New York to impede the plaintiff's rights to his USD. This money has been sold, gifted, or otherwise conveyed to Assaf, corporate insiders, and other preferred customers, from February 2020 when the Plaintiff gave notice of his intention to not renew his FTSA (A-102 to 105) through the present.[6]

A plaintiff should be provided with ample opportunity to secure and present evidence relevant to the existence of jurisdiction through jurisdictional

---

[6] BBAC failed to prepare and provide Annual Reports (let alone, independently audited reports) for fiscal years ending December 31, 2020, and December 31, 2021, which is evidence that BBAC failed to reconcile the duration of its investments with the nature of its deposits and resources, and that BBAC was insolvent in those fiscal years (A-98).

discovery. *See Phoenix Consulting, Inc. v. Republic of Angola, 216 F.3d 36, 40 (D.C.Cir.2000); Togut v. Forever 21, Inc., 285 F.Supp.3d 643 (S.D.N.Y. 2018).* Plaintiffs should be allowed to conduct jurisdiction discovery even in the absence of a *prima facie* showing as to the existence of jurisdiction. *In re Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 207–08 (2d Cir.2003);* see *Texas Int'l Magnetics, Inc. v. BASF, 31 F. App'x 738 (2d Cir. 2002)* (Plaintiffs in antitrust conspiracy action were entitled to jurisdictional discovery in order to develop factual record, where plaintiffs' jurisdictional allegations were neither sparse nor insufficiently specific, simply insufficiently developed to permit judgment as to whether personal jurisdiction was appropriate); *see also Wilson & Wilson Holdings LLC v. DTH, LLC, --- F.Supp.3d ---- (S.D.N.Y. May 15, 2023), 2023 WL 3449163.*

In the present matter, the plaintiff has presented, at the very least, a colorable claim for jurisdiction over both defendants. The defendants possess documents and knowledge that bear on the jurisdictional question and discovery of them will either permit the plaintiff to base its allegations on something more**,** or it might (though unlikely) establish that BBAC and/or Assaf are beyond the jurisdictional reach of New York courts. *See generally, Euro-Pro Operating LLC v. Euroflex Americas, 2008 WL 5137060 12 (S.D.N.Y. 2008)* (denying defendant's motion to dismiss and granting leave to plaintiff to conduct jurisdictional discovery).

It is requested that this Court reverse the lower Court and grant plaintiff

leave to conduct jurisdictional discovery.

## POINT II

## ALTERNATIVELY, THE DISTRICT COURT ERRED IN DISMISSING THE PRESENT MATTER "WITH PREJUDICE."

The District Court incorrectly granted defendants' motion to dismiss **with** prejudice (SPA-15). "Where the court is without jurisdiction, it is improper to make any order in the cause except to dismiss the suit ... A dismissal of an action or complaint cannot be with prejudice and the order should not contain a provision to that effect where it is on the grounds of want of jurisdiction." *Leviton Mfg. Co. v. Reeve, 942 F. Supp. 2d 244, 273 (E.D.N.Y. 2013), amended (Mar. 23, 2013) (quoting 35B C.J.S. Federal Civil Procedure § 844).*

Whether a dismissal is with or without prejudice refers to the "res judicata effect of a dismissal." *Elfenbein v. Gulf & Western Indus., Inc., 590 F.2d 445, 449 (2d Cir.1978).* Pursuant to Rule 41, dismissals for "lack of jurisdiction, improper venue, or failure to join a party" are not considered "adjudication[s] on the merits." *Fed. R. Civ. P. 41.* Accordingly, dismissals for lack of jurisdiction, having no res judicata effect, are entered "without prejudice." *See Smith v. United States, 554 F. App'x 30, 32 (2d Cir. 2013)* (Noting that "a dismissal for want of personal jurisdiction is without prejudice", the Second Circuit modified a judgment of dismissal with prejudice for lack of personal jurisdiction, requiring it to be entered

"without prejudice.").

The rule that a dismissal of an action for lack of jurisdiction should not be with prejudice has been applied throughout the Federal Circuits. *See Lauderdale-El v. Indiana Parole Bd., 35 F.4th 572, 576–77 (7th Cir. 2022)* ("Dismissals for lack of subject-matter jurisdiction are necessarily without prejudice… The same is true of dismissals for lack of personal jurisdiction."); (*Ruiz v. Snohomish Cnty. Pub. Util. Dist. No. 1, 824 F.3d 1161, 1164 (9th Cir. 2016)* ("[A] dismissal for want of personal jurisdiction is *not* a judgment "on the merits" for the purpose of res judicata"); *Frederiksen v. City of Lockport, 384 F.3d 437(7th Cir. 2004)* (Dismissal of complaint for lack of subject-matter jurisdiction cannot be "with prejudice."); and *Am. Realty Tr., Inc. v. Hamilton Lane Advisors, Inc., 115 F. App'x 662, 666–67 (5th Cir. 2004)*( "[C]ourt's ruling on personal jurisdiction did not address the merits of plaintiff's allegations…and, as a result, the claim… should have been dismissed without prejudice… Rule 41(b) …specifically exempts dismissals for lack of jurisdiction ... from the presumption that the dismissal is with prejudice" (internal citation and quotations omitted)).

In the present matter, the District Court declined to rule on the merits of Plaintiff's claims. Rather, the matter was dismissed for lack of personal jurisdiction and (possibly) forum non conviens. As such, the Court's judgment has no res judicata effect and should not have been entered with prejudice. Consequently, it is

respectfully requested that if the District Court's judgment is upheld on appeal, it be modified to reflect that the dismissal is ***without*** prejudice.

## POINT III

### PLAINTIFF SHOULD HAVE BEEN GRANTED PRE-JUDGMENT ATTACHMENT.

Federal courts allow for attachment based on "the law of the state where the court is located." *Fed. R. Civ. P. 64*. "Under New York law, an attachment bars any sale, assignment or transfer of, or any interference with the property attached." *Cap. Ventures Int'l v. Republic of Argentina (Cap. Ventures II), 652 F.3d 266, 270 (2d Cir. 2011) (internal quotation marks omitted).* It is available "where the plaintiff has demanded and would be entitled…a money judgment." *N.Y. C.P.L.R. 6201 (McKinney).* Based on C.P.L.R. 6201(1), one of the grounds for attachment is when "the defendant is a nondomiciliary residing without the state, or is a foreign corporation not qualified to do business in the state." (*C.P.L.R. 6201(1)*). Under this reason, a movant must also make a showing that defendant lacked the assets needed to satisfy a judgment or would likely attempt to hide assets. *VisionChina Media Inc. v. Shareholder Representative Services, LLC, 109 A.D.3d 49 (1st Dep't 2013).*

In the present matter, the District Court should have granted the plaintiff's request for pre-judgment attachment. According to BBAC's 2019 Public Audited Financial Statement in 2018, BBAC loaned and advanced 12,058 LL million to Directors and other key management personnel (and close family members) and

27

earned interest in the sum of 491 LL million from this class of individuals (A-388). According to BBAC's 2019 Public Audited Financial Statement in 2019, despite being insolvent, BBAC loaned and advanced 5,870 LL million to Directors and other key management personnel (and close family members) and earned interest in the sum of 640 LL million from this class of individuals (A-18, 388). BBAC is insolvent and, as of August 2020, required approximately $2.2 billion in fresh USD to support its balance sheet in accordance with international norms[7] (A-16, 17, 185, 186, 206).

BBAC does not refute that the above practices continued in FY 2020 and 2021, as it made loans or advanced, USD through its New York Correspondent accounts to Directors and other key management personnel and close family members (A-18, 31, 32). Assaf does not specifically refute that it did not receive dividends or other payments, or loans in USD by use of BBAC's correspondent bank accounts in New York.

BBAC's representative, Mr. Nadim Hamadeh, does not deny in his BBAC has Dr. Moussaoui 's $4,522,502.21 USD secured in its correspondent account(s) in New York, New York. Nor does he deny that BBAC has at least $4,522,502.21 USD in its correspondent account(s) in New York, New York (id). Mr. Hamadeh does not state in his Declaration that BBAC has adequate liquid USD in its possession

---

[7] See *Crisis in Lebanon, Anatomy of a Financial Collapse," James Rickards, August 2020 (*A portion of which is located at A-193 to 239; *See,* A- 185 to 187).

and control to satisfy the $4,522,502.21 USD judgment that Plaintiff will obtain in his Lebanon Action (id, and A-142 to 146, 407).

Corruption and mismanagement of the commercial banks in Lebanon, make it likely that a judgment procured by plaintiff will be rendered useless without the attachment of BBAC's assets in its New York bank accounts (A-190). Assaf, the majority shareholder of BBAC, received conveyances of USD while BBAC was insolvent (A-191). BBAC reported in its 2019 audit that 72% of its customer deposits were in USD and 7.46% of these deposits, with a value of $336 million, were held in other banks. (A-191, A- 453, 454). A majority of what is left of this $336 million is believed to be within the jurisdiction of New York courts (A-593).

The defendants are foreign business entities, not authorized to conduct business in New York. It is crystal clear that they owe Dr. Moussaoui over $4.5 million from his account. It is equally clear, based upon the above, that there is extremely likely, that unless Plaintiff is allowed to attach defendants' New York assets, defendants will lack the assets needed to satisfy a judgment in favor of plaintiff. The issues here are so stark, that the Court's failure to grant attachment was an abuse of discretion. Consequently, the lower Court erred in failing to grant plaintiff an order for attachment.

## CONCLUSION

For the reasons set forth herein and in the attached appendix, the plaintiff and appellant Ali Mohamad Moussaoui respectfully requests this Court reverse the subject District Court Decision and Order of September 14, 2023, dismissing the plaintiff's First Amended Complaint for lack of personal jurisdiction *with* prejudice. It is further requested that this Court reverse the lower Court and require it to enter an Order attaching the accounts defendants possess in their New York correspondent banks.

Dated:  New York, New York
          January 18, 2024

                    ____*/s/ Peter Sverd*_____
                    PETER SVERD, ESQ. (0406)

## CERTIFICATE OF COMPLIANCE WITH FRAP RULE 32(a)(7), FRAP RULE 32(g)

I hereby certify pursuant to Federal Rule of Appellate Procedure 32(g) that the attached brief is proportionally spaced, has a typeface (Times New Roman) of 14 points, and contains 6190 words (excluding, as permitted by Federal Rule of Appellate Procedure 32(f), the cover page, the table of contents, the table of authorities, the certificate of compliance, and the signature block) as counted by the Microsoft Word processing system used to produce this brief.

Dated  New York, New York
        January 18, 2024

                                    Respectfully submitted,


                                    */s/ Peter Sverd*
                                    Peter Sverd, Esq.
                                    Law Offices of Peter Sverd, PLLC
                                    225 Broadway, Ste. 613,
                                    New York, NY 10007
                                    (646) 751-8742

**SPECIAL APPENDIX**

i

## TABLE OF CONTENTS

**Page**

Opinion and Order of the Honorable Edgardo
Ramos, dated September 14, 2023 ....................... SPA-1

Judgment, dated September 14, 2023, Appealed
From....................................................................... SPA-16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ALI MOHAMAD MOUSSAOUI,

                              Plaintiff,

– against –

BANK OF BEIRUT AND THE ARAB
COUNTRIES, *also known as* BBAC BANK
S.A.L., and ASSAF HOLDING COMPANY
SAL,

                              Defendants.

**OPINION & ORDER**

22-cv-6137 (ER)

RAMOS, D.J.:

   Ali Mohamad Moussaoui brought this action against Bank of Beirut and the Arab

Countries ("BBAC") and Assaf Holding Company S.A.L. ("Assaf") (collectively, "the

defendants") to recover more than $3 million in funds he deposited in BBAC and was thereafter

unable to withdraw.[1]  Doc. 7; Doc. 26.  In short, Moussaoui alleges that the defendants

improperly prevented him from obtaining his funds and closing his account.

   Pending before the Court is the defendants' motion to dismiss the first amended

complaint ("FAC").  Doc. 39.  For the reasons set forth below, the motion is GRANTED.

## I.   BACKGROUND

### A.  Factual Background

   The following facts are based on the allegations in the FAC, Doc. 26, which the Court

accepts as true for purposes of the instant motion.[2]  *See, e.g.*, *Koch v. Christie's Int'l PLC*, 699

F.3d 141, 145 (2d Cir. 2012).

---

[1] Moussaoui added J.P. Morgan Chase Bank, N.A., and Citibank, N.A., as defendants in his amended complaint.
Doc. 26.  However, as set forth below, these entities were then voluntarily dismissed from the suit.  Doc. 62.

[2] Courts may also consider documents attached to the complaint as exhibits, as well as documents incorporated by
reference in the complaint.  *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (citing *Chambers v.
Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).  If "a document relied on in the complaint contradicts
allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations
in the complaint as true."  *Maury v. Ventura in Manhattan, Inc.*, 544 F. Supp. 3d 396, 400 (S.D.N.Y. 2021) (citing
*Poindexter v. EMI Record Group Inc.*, No. 11 Civ. 559, 2012 WL 1027639, at *2 (S.D.N.Y. Mar. 27, 2012) (internal

SPA-2

### i. Moussaoui's Relationship with BBAC

Moussaoui is a resident of Texas, and he is a citizen of both the United States and Lebanon. FAC, Doc. 26 ¶ 1; Moussaoui Decl., Doc. 49 ¶ 2. BBAC is a Lebanese commercial bank that is not licensed to conduct business anywhere in the United States. Hamadeh Decl., Doc. 43 ¶ 4. Its activities include consumer lending, issuing credit cards, corporate banking services, and trade finance services. *Id.* The bank neither operates nor solicits business in New York; however, it does maintain correspondent relationships with J.P. Morgan Chase Bank, N.A. and Citibank, N.A. in New York. *Id.*; FAC, Doc. 26 ¶ 36; 37. Those relationships, along with its other correspondent bank accounts throughout the world, facilitate transactions in foreign currencies for its customers. Hamadeh Decl., Doc. 43 ¶ 7. Assaf is a holding company that owns more than half of the issued and outstanding shares of BBAC.[3] FAC, Doc. 26 ¶ 13.

In 2012, while living in Lebanon, Moussaoui opened a fixed term savings account with BBAC—a specific category of account that paid him interest on his deposits for a fixed period of time.[4] Moussaoui Decl., Doc. 49 ¶ 5; FAC, Doc. 26 ¶¶ 80, 82; *see also* Hamadeh Decl., Doc. 43 ¶ 8.

---

quotation marks omitted). Here, the complaint relies on a number of documents that are incorporated by reference, including a banking agreement and its translations. Additionally, the Court considers the several declarations submitted by both parties and which are attached to the pleadings.

[3] According to Moussaoui, BBAC transferred a significant amount of funds to Assaf in an effort to frustrate any judgment procured against BBAC. *E.g.*, FAC, Doc. 26 ¶ 223. The parties dispute whether Assaf operates within or otherwise has connections to New York. *Compare* FAC, Doc. 26 ¶ 232 (alleging that BBAC fraudulently conveyed U.S. dollars to Assaf, which Assaf is holding in New York banks in order to frustrate future judgments) *with* Doc. 40 at 8 (stating that Assaf has no operations, connections, or assets in New York); *see also* Housamy Decl., Doc. 54 ¶¶ 4–13 (noting that Assaf does not operate in New York, does not maintain bank accounts or hold assets in New York, and has no relationship with Moussaoui, and asserting that correspondent accounts were not used to facilitate any payments from BBAC to Assaf during the period described in the complaint).

[4] As relevant here, the banking agreement—which is in Arabic—included a forum selection clause, which provided as follows according to the defendants:

> If any dispute arises from the interpretation or the execution of our agreement or any of its clauses, the Courts of Beirut shall have jurisdiction to consider and settle such dispute. This jurisdiction is in the interest of your Bank, which will have the exclusive right to refer to any other judicial authority having jurisdiction, in accordance with the jurisdiction rules set forth in the Code of Civil Procedure.

As of November 5, 2015, Moussaoui maintained a balance of more than $3,379,134 in the account. FAC, Doc. 26 ¶ 83. He alleges that between 2015 and January 1, 2019, BBAC transferred money to him using banks in New York on eighteen separate occasions, and he used New York banks to transfer money to his BBAC account in Lebanon on thirteen separate occasions. *Id.* ¶¶ 84, 85. However, BBAC maintains that Moussaoui did not initiate *any* international transfers from his account in Lebanon during that time.[5] Hamadeh Decl., Doc. 43 ¶¶ 9, 10.

On February 11, 2020, the term investment matured. FAC, Doc. 26 ¶ 86. Prior to that date, and pursuant to the terms of the account agreement, Moussaoui directed BBAC to close his account and wire the principal amount to his Chase Bank account in the United Sates through BBAC's correspondent accounts in New York. *Id.* ¶¶ 88, 89, 90. BBAC refused to close the account and failed to wire the principal as instructed by Moussaoui. *Id.* ¶¶ 91, 92. BBAC declined to do so despite Moussaoui's repeated requests over the course of one year. *Id.* ¶¶ 93, 94, 95. Without Moussaoui's consent, BBAC then rolled over the account. *Id.* ¶ 97. In other words, instead of liquidating the deposit amount, the bank renewed the deposit for another fixed term.

Over the course of the next two years, BBAC amended the terms that applied to his deposit on two occasions. First, on October 12, 2020, BBAC lowered the interest rate to 1.60%, a rate that was "unilaterally" applied by BBAC, and which Moussaoui did not agree to. *Id.*

---

Moghaizel Decl., Doc. 44 ¶ 9 (translating from Arabic Article 29 of the banking agreement). Moussaoui argues that the clause is properly translated as being permissive rather than mandatory, providing that in case of a dispute, "Beirut courts *could be competent to hear and decide thereon.*" Doc. 60-1 ¶ 29. The agreement also provided that "choosing a domicile for the purposes of correspondence does not affect in any way the jurisdiction of the Beirut courts" provided for in the agreement. Moghaizel Decl., Doc. 44 ¶ 10 (defendants translating from Arabic Article 30 of the banking agreement); Doc. 60-1 ¶ 30 (plaintiff translating from Arabic Article 30 of the banking agreement).

[5] BBAC maintains that Moussaoui deposited $390,004.98 into the account on June 11, 2015, and made an additional deposit of $600,000 on July 17, 2018. Hamadeh Decl., Doc. 43 ¶ 8. Aside from these deposits, there were no deposits or transactions other than deductions of service charges from the account, *id.*, although the account showed credits for interest earned, debits of withholding taxes, and service charges, *id.* ¶ 9. BBAC has no evidence of any New York correspondent bank account transfers relating to Moussaoui. *Id.* ¶ 10.

¶¶ 99, 100.  Then on November 20, 2021, BBAC amended the terms again by lowering the interest rate to 0.10%, a rate that was again unilaterally applied BBAC, and which Moussaoui did not agree to.  *Id.* ¶¶ 107, 108, 109.

Throughout this period, Moussaoui demanded that BBAC transfer or wire his funds to his Chase Bank account, but BBAC refused to do so.  *Id.* ¶¶ 101–106.  BBAC offered only to issue a banker's check drawn on Banque Du Liban ("BDL"), the central bank of Lebanon, *id.* ¶ 103; however, Moussaoui rejected that offer on the basis that no bank would accept a check drawn against Banque Du Liban due to its lack of funds, *id.* ¶¶ 104, 105.

### ii.    The Banking Crisis in Lebanon and Parallel Litigation

Over the past several years, and specifically since October 2019, Lebanon has suffered from a volatile political and economic situation, which has impacted its banking sector. Hamadeh Decl., Doc. 43 ¶ 16.  In response to the crisis, "a number of restrictive measures have been adopted," including limitations on the withdrawal of funds—especially withdrawals in foreign currency.  *Id.*; *see also Daou v. BC Bank, S.A.L.*, No. 20 Civ. 4438 (DLC), 2021 WL 1338772, at *1 (S.D.N.Y. Apr. 9, 2021) (explaining that Lebanon's banks closed for a period of time in 2019 and subsequently imposed restrictions on withdrawals and transfers from Lebanese bank accounts to overseas accounts) *aff'd* 42 F.4th 120 (2d Cir. 2022).[6]  Specifically, BDL has restricted withdrawals and transfers of foreign currency abroad except in limited circumstances

---

[6] The Second Circuit elaborated on the cause of the crisis in a June 2022 opinion affirming the dismissal of a case similar to Moussaoui's.  *Daou v. BLC Bank, S.A.L.*, 42 F.4th 120, 126 (2d Cir. 2022).  In relevant part, it stated as follows:

> In late 2019, Lebanon's financial sector began spiraling into crisis.  Starting in the 1990s, the Lebanese pound ("LBP") had been pegged to the U.S. dollar, an arrangement that required a steady influx of USD into Lebanon to maintain.  But in response to political unrest in 2019 that resulted in the prime minister's resignation, foreign investors began to pull out of the country, causing the influx of USD to dry up.  The LBP began to plunge in value, . . . and the Lebanese banking sector tried desperately to prevent a run on the banks, first by temporarily closing the country's banks, and then by making it nearly impossible to remove large quantities of USD from the country.

*Id.*

that are specifically authorized, including payments for the import of supplies, tuition payments, and medical emergencies.  Hamadeh Decl., Doc. 43 ¶ 17.

In the midst of this crisis, Moussaoui filed an action (the "Lebanese action") in the "Next Court of First Instance" in Beirut, Lebanon, against both of the defendants, on January 11, 2022.  FAC, Doc. 26 ¶ 126.  He sought damages for conversion and breach of Lebanon's banking laws.  *Id.*  In that case, Moussaoui requested that the court seize the defendants' assets through precautionary attachment, *id.* ¶ 132, and the court issued an order directing Moussaoui to clarify the property owned by BBAC, *id.* ¶¶ 133, 134.  Moussaoui alleges, upon information and belief, that the defendants have accounts in New York that can be attached to satisfy any judgment against them.  *Id.* ¶ 135.  The Lebanese action is ongoing.  *Id.* ¶ 137.

**B.  Procedural History**

The instant complaint was initially filed under seal on July 14, 2022.  Doc. 1.  On August 16, 2022, Moussaoui filed a motion for an *ex parte* pre-judgment order of attachment.  Doc. 9.  The Court held a telephonic conference the same day, Min. Entry dated Aug. 16, 2022, and denied the motion, Doc. 15.  The Court concluded that it was unclear whether Moussaoui was entitled to a money judgment from the defendants, and attachment was otherwise not necessary.  Hr'g Tr., Doc. 33 at 8:11–9:11.

Thereafter, the defendants filed a letter motion requesting a pre-motion conference in advance of the instant motion to dismiss on October 19, 2022.  Doc. 18.  The Court held a conference on November 3, 2022, wherein it provided Moussaoui with the opportunity to amend the complaint and granted defendants leave to file their motion to dismiss.  Min. Entry dated Nov. 3, 2022.  Moussaoui amended the complaint on November 7, 2022, Doc. 26, and the defendants filed their motion, which was fully briefed on March 7, 2023, Doc. 60.

On April 3, 2023, Moussaoui voluntarily dismissed its claims against J.P. Morgan Chase Bank, N.A. and Citibank, N.A. with prejudice.  Doc. 62.

## II.    LEGAL STANDARDS

Before the Court is the defendants' motions to dismiss the complaint for lack of jurisdiction, *forum non conveniens*, and failure to state a claim.  Doc. 39.

### A.  Rule 12(b)(2)

Upon motion, the Court must dismiss an action against any defendant over whom it lacks personal jurisdiction.  *See* Fed. R. Civ. P. 12(b)(2).  A plaintiff "opposing a motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction has the burden of establishing that the court has jurisdiction over the defendant."  *BHC Interim Funding, LP v. Bracewell & Patterson, LLP*, No. 02 Civ. 4695 (LTS) (HBP), 2003 WL 21467544, at *1 (S.D.N.Y. June 25, 2003) (citing *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999)).  The plaintiff "must establish the court's jurisdiction with respect to each claim asserted."  *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 83 (2d Cir. 2018) (quoting *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004)).

To meet this burden, a plaintiff must plead facts sufficient for a *prima facie* showing of jurisdiction.  *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001).  The Court construes all of the plaintiffs' allegations as true and resolves all doubts in the plaintiffs' favor.  *Casville Invs., Ltd. v. Kates*, No. 12 Civ. 6968 (RA), 2013 WL 3465816, at *3 (S.D.N.Y. July 8, 2013) (citing *Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008); *Martinez v. Bloomberg LP*, 883 F. Supp. 2d 511, 513 (S.D.N.Y. 2012)).  "However, a plaintiff may not rely on conclusory statements without any supporting facts, as such allegations would lack the factual specificity necessary to confer jurisdiction."  *Art Assure Ltd., LLC v. Artmentum GmbH*, No. 14 Civ. 3756 (LGS), 2014 WL 5757545, at *2 (S.D.N.Y. Nov. 4, 2014) (internal quotation marks and citation omitted).  The Court may rely on additional materials outside the pleading when ruling on 12(b)(2) motions.  *John Hancock Prop. & Cas. Ins. Co. v. Universale Reinsurance Co.*, No. 91 Civ. 3644 (CES), 1992 WL 26765, at *1 n.1 (S.D.N.Y. Feb. 5, 1992); *Darby Trading Inc.*

*v. Shell Intern. Trading and Shipping Co. Ltd.*, 568 F. Supp. 2d 329, 334 (S.D.N.Y. 2008) (citations omitted).

### B.  *Forum Non Conveniens*

The doctrine of *forum non conveniens* allows a court to dismiss an action "even if the court is a permissible venue with proper jurisdiction over the claim." *LaSala v. Bank of Cyprus Pub. Co. Ltd.*, 510 F. Supp. 2d 246, 254 (S.D.N.Y. 2007) (quoting *Carey v. Bayerische Hypo-und Vereinsbank AG*, 370 F.3d 234, 237 (2d Cir. 2004)).  "A decision to grant or deny a motion to dismiss a cause of action under the doctrine of *forum non conveniens* lies wholly within the broad discretion of the district court." *Scottish Air Int'l, Inc. v. British Caledonian Grp., PLC*, 81 F.3d 1224, 1232 (2d Cir. 1996).

The Second Circuit has "outlined a three-step process to guide the exercise of that discretion." *Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 153 (2d Cir. 2005) (citing *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 73 (2d Cir. 2001) (en banc)).  First, "a court determines the degree of deference properly accorded the plaintiff's choice of forum." *Id.* Second, "it considers whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute." *Id.*  And third, "a court balances the private and public interests implicated in the choice of forum." *Id.*

If there is a forum selection clause at issue, however, the calculus is altered because a valid[7] forum selection clause is given "controlling weight in all but the most exceptional cases." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S.Ct. 568, 581 (2013); *see also M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972) (forum selection clauses are "prima facie valid" and should be enforced unless demonstrated to be "unreasonable" under the circumstances).  In such instances, the Court must determine:  (1) whether the forum selection

_____

[7] In the Second Circuit, a forum selection clause is presumptively valid if it was reasonably communicated to the party resisting enforcement, is mandatory and not merely permissive, and covers the claims and parties involved in the suit.  *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383 (2d Cir. 2007).  To overcome this presumption of enforceability, Plaintiff has the burden to make "a sufficiently strong showing that 'enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.'"  *Id.* at 383–84 (citing *Bremen*, 407 U.S. at 15, 92 S.Ct. 1907).

clause is valid, and (2) whether public interest factors nevertheless counsel against its enforcement. *Atlantic,* 134 S.Ct. at 581–82; *Midamines SPRL Ltd. v. KBC Bank NV*, No. 12 Civ. 8089 (RJS), 2014 WL 1116875 at \*3 (S.D.N.Y. Mar. 18, 2014).

### C. Rule 12(b)(6)

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Christie's Int'l PLC*, 699 F.3d at 145. However, the Court is not required to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also id.* at 681 (citing *Twombly*, 550 U.S. at 551).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

The question on a motion to dismiss "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)). "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits." *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (internal quotation marks and citations omitted).

## III.    DISCUSSION

### A.  Dismissal

When the Court is confronted by a motion raising a combination of Rule 12(b) defenses, it will address the jurisdictional issues before considering whether the complaint states a claim. *See Darby Trading*, 568 F. Supp. 2d at 335 (citing *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 221 (2d Cir. 1963)); *Yellow Page Sols. Inc. v. Bell Atl. Yellow Pages Co.*, No. 00-cv-5663 (MM), 2001 WL 1468168, at *3 (S.D.N.Y. Nov. 19, 2001) (citation omitted).

### i.   Rule 12(b)(2) Personal Jurisdiction

"District courts deciding a motion to dismiss for lack of personal jurisdiction engage in a two-part analysis, first determining whether there is a statutory basis for exercising personal jurisdiction and second deciding whether the exercise of jurisdiction comports with due process." *BWP Media USA Inc. v. Hollywood Fan Sites, LLC*, 69 F. Supp. 3d 342, 349–50 (S.D.N.Y. 2014) (citations omitted).  In New York, the statutory bases for exercising personal jurisdiction can be found in N.Y. C.P.L.R. §§ 301 and 302.  *See Taormina v. Thr.fty Car Rental*, No. 16-CV-3255, 2016 WL 7392214, at *3, 5 (S.D.N.Y. Dec. 21, 2016).

In the amended complaint, Moussaoui argues that jurisdiction is proper pursuant to a *quasi in rem* theory.  FAC, Doc. 26 ¶¶ 32, 33.  In support of that contention, the FAC asserts that BBAC and Assaf maintain correspondent banking relationships in New York, wherein the defendants maintain U.S. dollars.  *Id.*  Additionally, in his opposition to the defendants' motion to dismiss, Moussaoui asserts that the complaint makes a *prima facie* showing of *in personam* jurisdiction under New York's long-arm statute as well.[8]  Doc. 50 at 14.

Both of Moussaoui's arguments fail here, and the action is properly dismissed for lack of personal jurisdiction.

"In the absence of a federal statute specifically directing otherwise, and subject to limitations imposed by the United States Constitution, we look to the law of the forum state to

---

[8] This basis for personal jurisdiction was not set forth in the FAC.  *See generally* FAC, Doc. 26.

determine whether a federal district court has personal jurisdiction over a foreign corporation." *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016). Because "[t]he reach of New York's long-arm statute . . . does not coincide with the limits of the Due Process Clause," *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 244 (2d Cir. 2007), when the forum is in New York, we must look to that statute's specific provisions to determine whether personal jurisdiction exists as a matter of state law.

The Court first considers Moussaoui's *in personam* jurisdiction arguments. He asserts that the Court has personal jurisdiction over the defendants under N.Y. C.P.L.R. § 302(a)(1), which confers on courts personal jurisdiction over a defendant who "transacts any business within the state or contracts anywhere to supply goods or services in the state," "[a]s to a cause of action arising from" such a transaction. *See* Doc. 50 at 15. "To establish personal jurisdiction under section 302(a)(1), two requirements must be met:  (1) The defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006), citing *McGowan v. Smith*, 52 N.Y.2d 268, 273, 437 N.Y.S.2d 643, 419 N.E.2d 321 (1981).

Moussaoui has failed to make the requisite showing here. To be sure, the FAC and the incorporated documents make clear that the defendants maintained accounts in New York, even if there were only a "relatively small number of specific correspondent transactions" stemming from those accounts, *Daou*, 42 F.4th at 129, and BBAC specifically held its correspondent accounts to facilitate the foreign transactions of its customers, Hamadeh Decl., Doc. 43 ¶ 7. However, while the defendants maintained accounts in the state, the record does not show that the defendants consistently or systematically transacted business in New York.

Critically, moreover, the instant claims do not arise out of any *specific* transaction or business activity conducted by the defendants in New York. *See Daou*, 42 F.4th at 130 (emphasizing that "not every conceivable connection to a New York transaction is substantial enough to confer jurisdiction"). Rather, the claims are based on broad allegations regarding correspondent banking relationships and accounts maintained by the defendants in New York.

10

*See, e.g.*, FAC, Doc. 26 ¶¶ 45, 46, 47, 48, 49, 50, 53, 54, 55, 62, 65, 66 (alleging that the defendants maintained correspondent banking relationships with New York banks and used these accounts to transact business).  Beside the broad contention that these accounts were maintained to fraudulently deprive BBAC customers of their funds, the FAC fails to identify "*an alleged actual transaction* made" through these accounts that "formed part of the alleged unlawful course of conduct underlying the cause of action set out in the complaint."  *Daou*, 42 F.4th at 130 (emphasis added).

As the defendants emphasize, the Second Circuit's decision in *Daou* controls here.  Doc. 51 at 9.  In that opinion, the Second Circuit made clear that Lebanese commercial banks are not subject to long-arm jurisdiction on state law claims premised on wrongful refusal to release and transfer U.S. dollars to depositors outside of Lebanon.  *Daou*, 42 F.45h at 131–33; *id.* at 132 ("The [complaint] . . . does not include a single allegation that any defendant used an *actual, specific transaction through a New York correspondent account* in the course of bringing about the injuries on which the claims are predicated – namely, that the [plaintiff's] USD remained in Lebanon.") (emphasis added).  Moussaoui's attempts to distinguish the Second Circuit's clear pronouncement in this regard are unavailing.  Indeed, as the defendants point out, the cases cited by Moussaoui involve situations wherein the harm incurred by plaintiffs was caused by the transfers themselves.  Doc. 51 at 10; *e.g.*, *Dale v. Banque SCS Alliance S.A.*, No. 02 Civ. 3592, 2005 WL 2347853 (S.D.N.Y. Sept. 22, 2005) (finding that personal jurisdiction was properly established in a fraud action where specific funds were laundered through a series of wire transfers to correspondent bank accounts).  Here, on the other hand, Moussaoui's inability to withdraw his funds in U.S. dollars was not caused by the defendants' possession of correspondent bank accounts in the United States; rather, the record shows that it was precipitated by the banking crisis and Lebanon's corresponding regulations within its banking sector.  *See* Hamadeh Decl., Doc. 43 ¶¶ 16, 17.

Moussaoui's efforts to compare his case to a series of terrorism financing cases wherein courts have exercised personal jurisdiction over defendant banks maintaining correspondent

accounts in the United States are unsuccessful for the same reasons. *See generally* Doc. 50 at 17–18. Indeed, where courts have found personal jurisdiction over defendant banks in those cases, they have concluded that the defendant banks' correspondent accounts were used to transmit money to terrorist organizations via specific, documented, and knowing transactions. *See, e.g.*, *Foley v. Union de Banques Arabes et Francaises*, No. 22 Civ. 1682 (ER), 2023 WL 4646793, at *10 (S.D.N.Y. July 20, 2023). As the Second Circuit noted in *Daou*, that is not the situation in cases like this one, where the alleged unlawful activity underlying Moussaoui's claims does not involve an identified transaction that took place through accounts maintained by the defendants. *Daou*, 42 F.4th at 131.

Moussaoui's *quasi in rem* theory also fails to persuade the Court that it can exercise jurisdiction over the defendants here. "[Q]uasi in rem jurisdiction is traditionally based on attachment or seizure of property present in the jurisdiction, not on contacts between the defendant and the State." *Shaffer v. Heitner*, 433 U.S. 186, 196 (1977). The doctrine allows the Court to establish jurisdiction over a party based upon its power over property within its territory. *Id.* at 199; *Allied Maritime, Inc. v. Descatrade SA*, 620 F.3d 70, 74 (2d Cir. 2010). The property serving as the basis for jurisdiction must be related to the plaintiff's cause of action to support jurisdiction; the presence of the property alone is not enough. *Glencore AG v. Bharat Aluminum Co. Ltd.*, No. 10 Civ. 5251 (SAS), 2010 WL 4323264, at *5 (S.D.N.Y. Nov. 1, 2010). If a defendant has property in the state, the Court must consider whether the exercise of jurisdiction offends the Due Process clause of the Fourteenth Amendment, that is, the Court must ensure that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. *Id.*

As set forth above, the funds in the defendants' New York accounts are not tied to the claims set out in the complaint. Aside from his broad and conclusory assertions regarding the defendants' transfers of funds to the United States, Moussaoui has failed to sufficiently show that any such funds are significantly tied to the purported harms he experienced as set forth in the FAC. *See generally* FAC, Doc. 26. Additionally, as the defendants note, the caselaw in this

District consistently sets out that *quasi in rem* jurisdiction is not proper where an order of attachment is not in place and the property at issue has not otherwise been seized.  *E.g.*, *Manichaean Cap., LLC v. SourceHOV Holdings, Inc.*, No. 20 Civ. 5679 (AKH), 2021 WL 276674, at *2 (S.D.N.Y. Jan. 27, 2021) (stating that New York law permits *quasi in rem* jurisdiction over a nondomiciliary defendant where a levy upon the property of the defendant has been made pursuant to an order of attachment or a seizure); *see also Concord Line Co. v. Just Oil & Grain Pte Ltd.*, No. 08 Civ. 5035 (AKH), 2010 WL 2382414, at *2 (S.D.N.Y. June 14, 2010). Of course, there is no such order of attachment or property seizure before the Court in the instant case.  *See* Doc. 15.

    **ii.**  *Forum Non Conveniens* **& Ongoing Litigation in Lebanon**

Additionally, the defendants set forth compelling arguments that, even if the Court could exercise personal jurisdiction over them, this is an improper forum pursuant to the doctrine of *forum non conveniens*.  As set forth above, Moussaoui's banking agreement contained a forum selection clause.  At this juncture, the parties dispute whether the clause was mandatory or permissive due to the fact that the record contains several competing translations of the clause. *Compare* Moghaizel Decl., Doc. 44 ¶ 9 *with* Doc. 60-1 ¶ 29.  Given this dispute, and because the Court concludes here that it cannot exercise personal jurisdiction over these defendants, it need not decide whether the clause governs here.

Nevertheless, the Court underscores that the banking agreement suggests that the parties anticipated that disputes arising from it would be litigated in Lebanon.  In fact, Moussaoui initially pressed his claims in Lebanon.  As set forth above, before bringing this case, Moussaoui first filed suit against the defendants in Beirut, Lebanon in January 2021, wherein he sought damages for conversion and breach of Lebanon's banking laws.  FAC, Doc. 26 ¶ 126. Moussaoui's arguments in that case mirrored those that he brought here.  *See* FAC, Doc. 26 ¶¶ 126–133.  That litigation is ongoing.  FAC, Doc. 26 ¶ 137.  Accordingly, as the defendants point out, there is a strong basis to conclude that interests in international comity are hampered by permitting Moussaoui, who is not a New York resident, to pursue claims arising out of a

dispute centered in Lebanon—where Moussaoui is a citizen, where he opened the bank account at issue, where the defendants are located, and where the relevant conduct took place.  Doc. 40 at 20.

Additionally, as the defendants underscore, Lebanon has a unique, important public policy interest in hearing this dispute due to the relationship between Moussaoui's claims and the ongoing crisis taking place there.  Doc. 40 at 21.  Indeed, as they note, the claims "implicate [BDL]'s authority to regulate within Lebanon's borders, including carefully maintaining the country's foreign currency resources."  *Id.* at 21–22.  Moussaoui's claims do not implicate New York.  And as the defendants also argue, "if every foreign bank customer whose transactions pass through New York correspondent accounts of foreign banks was to litigate in New York," the courts in New York would be "swamped with litigation" having limited connection to the state.  *Id.* at 22.  Finally, as the Court stated in a prior hearing, Moussaoui's claims likely "require an analysis of Lebanese law," Hr'g Tr., Doc. 33 at 8:19–8:20, and the record shows that Lebanese courts are able and uniquely suited to do so, Doc. 40 at 20; Moghaizel Decl., Doc. 44 ¶¶ 17, 18, 19, 20, 21; *see also* FAC, Doc 26 ¶¶ 126–137.

### iii. Rule 12(b)(6)

Because the Court here grants the defendants' motion to dismiss for lack of personal jurisdiction, it will not address their arguments regarding whether Moussaoui's claims are otherwise sufficiently pleaded pursuant to Rule 12(b)(6).  *See Darby Trading*, 568 F. Supp. 2d at 335.

### B.  Plaintiff's Request for Jurisdictional Discovery

In the alternative, Moussaoui moves for leave to conduct jurisdictional discovery.  Doc. 50 at 30.  That request is denied.  The Second Circuit has held that a plaintiff who is unable to state a *prima facie* case for jurisdiction is not entitled to jurisdictional discovery.  *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 186 (2d Cir. 1998).  Indeed, "[d]istrict courts in this circuit routinely reject requests for jurisdictional discovery where a plaintiff's allegations are insufficient to make out a *prima facie* case of jurisdiction."  *Stutts v. De Dietrich Grp.*, 465 F. Supp. 2d 156, 169

14

(E.D.N.Y. 2006) (collecting cases).  The decision of whether to allow jurisdictional discovery is left to the Court's discretion.  *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 255 (2d Cir. 2007) (citing *First City, Texas-Houston, N.A. v. Rafidain Bank*, 150 F.3d 172, 175 (2d Cir. 1998)).

Having failed to make out a *prima facie* case of jurisdiction, the Court denies Moussaoui's request for jurisdictional discovery.  The record here shows that that process would expend significant efforts and would be futile.

IV.    **CONCLUSION**

For the foregoing reasons, the defendants' motion to dismiss the FAC with prejudice is GRANTED.  The Clerk of Court is respectfully directed to terminate the pending motion, Doc. 39, and close the case.

It is SO ORDERED.

Dated:    September 14, 2023
          New York, New York

_____
              Edgardo Ramos, U.S.D.J.

SPA-16

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X
ALI MOHAMAD MOUSSAOUI,

                              Plaintiff,

              -against-                                    22 **CIVIL** 6137 (ER)

                                                          **JUDGMENT**
BANK OF BEIRUT AND THE ARAB
COUNTRIES, also known as BBAC BANK
 S.A.L., and ASSAF HOLDING COMPANY
SAL,

                              Defendant.
-------------------------------------------------------------------X


              It is hereby **ORDERED, ADJUDGED AND DECREED:**  That for the reasons

stated in the Court's Opinion and Order dated September 14, 2023, Defendants' motion to

dismiss First Amended Complaint is GRANTED; accordingly, the case is closed.

**Dated:**  New York, New York

              September 14, 2023


                                                  **RUBY J. KRAJICK**
                                      _____
                                                  **Clerk of Court**
                                      **BY:**
                                      _____
                                                  **Deputy Clerk**