# 23-7332-cv

## United States Court of Appeals
### for the
### Second Circuit

ALI MOHAMAD MOUSSAOUI,

*Plaintiff-Appellant,*

ABC,

*Plaintiff,*

v.

BANK OF BEIRUT AND THE ARAB COUNTRIES, also known as BBAC Bank S.A.L., ASSAF HOLDING COMPANY SAL,

*Defendants-Appellees,*

DEF, J.P. MORGAN CHASE BANK N.A., CITIBANK N.A.,

*Defendants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

**BRIEF FOR DEFENDANTS-APPELLEES
BANK OF BEIRUT AND THE ARAB COUNTRIES, also known
as BBAC BANK S.A.L., ASSAF HOLDING COMPANY SAL**

**DLA Piper LLP (US)**
Neal F. Kronley
David Toner
1251 Avenue of the Americas
New York, NY 10020
T: 212.335.4500

**DLA Piper LLP (US)**
Samantha L. Chaifetz
500 Eighth Street, NW
Washington, DC 20004
T: 202.799.4082

APRIL 19, 2024

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1(a), Defendants-Appellees Bank of Beirut and the Arab Countries, also known as BBAC Bank S.A.L., and Assaf Holding Company SAL certify that no publicly held company owns ten percent or more of their shares.[1]

Dated: April 19, 2024

**DLA PIPER LLP (US)**

*/s/ Samantha L. Chaifetz*
Samantha L. Chaifetz
500 Eighth Street, NW
Washington, DC 20004
T: 202.799.4082
F: 202.799.5082

*Counsel for Defendants-Appellees Bank of Beirut and the Arab Countries, also known as BBAC Bank S.A.L., and Assaf Holding Company SAL*

---

[1] As noted on the Acknowledgment and Notice of Appearance filed by lead counsel for the Defendants-Appellees (Dkt. No. 10.1), the case caption for this matter erroneously identifies "ABC" and "DEF" as a plaintiff and a defendant, respectively. These placeholder names appeared on the district court docket in error and were subsequently removed.

i

## TABLE OF CONTENTS

**Page(s)**

INTRODUCTION ................................................................ 1

STATEMENT OF JURISDICTION ...................................... 3

STATEMENT OF THE ISSUES ........................................... 3

STATEMENT OF THE CASE .............................................. 4

    A.    Factual Background. .............................................. 5

        1.    The Parties. ................................................ 5

        2.    The Parties' Banking Activity ....................... 6

        3.    Moussaoui's First-Filed Case in Lebanon. ........ 8

    B.    Prior Proceedings. ............................................... 9

SUMMARY OF ARGUMENT ............................................ 12

STANDARD OF REVIEW ................................................ 16

ARGUMENT ................................................................... 17

I.    The District Court Correctly Held That Defendants Are Not Subject to Personal Jurisdiction in New York ............................. 17

    A.    New York Law Precludes the Exercise of Personal Jurisdiction Over BBAC and Assaf. ..................................... 17

        1.    Defendants Are Not Subject to *In Personam* Jurisdiction Under New York's Long-Arm Statute. .................................... 17

        2.    Defendants Are Not Subject to *Quasi In Rem* Jurisdiction Under New York Law ............................. 26

    B.    The Exercise of Jurisdiction Does Not Comport with Constitutional Due Process .................................... 27

1.   Moussaoui Does Not Satisfy The "Minimum Contacts" Test. ..............................................28

2.   The Exercise of Jurisdiction Here Would Be Unreasonable. ...........................................30

II.   *Forum Non Conveniens* Provides an Independent Basis for Affirming Dismissal of Moussaoui's Suit......................................32

III.   The District Court Did Not Abuse its Discretion by Denying Moussaoui's Request for Jurisdictional Discovery. .....................37

IV.   The District Court Did Not Abuse its Discretion by Denying Moussaoui's Ex Parte Motion for Attachment. .............................40

V.   The District Court's Judgment Should Be Affirmed. ...................45

CONCLUSION .................................................46

# TABLE OF AUTHORITIES

**Page(s)**

Cases

*651 Bay St., LLC v. Discenza,*
189 A.D.3d 952 (3d Dep't 2020) ........................................................ 41

*Aenergy, S.A. v. Republic of Angola,*
31 F.4th 119 (2d Cir. 2022) ........................................................ 14, 33

*Best Van Lines, Inc. v. Walker,*
490 F.3d 239 (2d Cir. 2007) ................................................................ 38

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cnty.,*
137 S. Ct. 1773 (2017) ................................................................ 31, 32

*Burger King Corp. v. Rudzewicz,*
471 U.S. 462 (1985) ........................................................................... 28

*Chaar v. Arab Bank P.L.C.,*
220 A.D.3d 479 (1st Dep't 2023) ....................................... 2, 26, 30, 40

*Chaar v. Arab Bank, PLC,*
2022 WL 3104606 (Sup. Ct. N.Y. Cnty. Aug. 3, 2022) ...................... 29

*Chloé v. Queen Bee of Beverly Hills, LLC,*
616 F.3d 158 (2d Cir. 2010) ........................................................ 27, 30

*Daou v. BLC Bank, S.A.L.,*
42 F.4th 120 (2d Cir. 2022) ...................................................... *passim*

*Denny v. Barber,*
576 F.2d 465 (2d Cir. 1978) ................................................................ 45

*Du Quenoy v. Am. Univ. of Beirut,*
828 F. App'x 769 (2d Cir. 2020) ......................................................... 36

*El Omari v. Int'l Crim. Police Org.,*
35 F.4th 83 (2d Cir. 2022) ................................................................. 16

*Elghossain v. Bank Audi S.A.L.*,
2023 WL 6390160 (S.D.N.Y. Sept. 29, 2023) .............................. *passim*

*Elsevier, Inc. v. Grossman*,
883 F. Supp. 2d 398 (S.D.N.Y. 2012) ................................... 41

*EM Ltd. v. Republic of Argentina*,
473 F.3d 463 (2d Cir. 2007) ............................................... 17

*In re Fosamax Prods. Liability Litig.*,
2009 WL 3398930 (S.D.N.Y Oct. 21, 2009) ...................................... 35

*Frontier Dev. PLC v. Atari Interactive, Inc.*,
2017 WL 87178 (Sup. Ct. N.Y. Cnty. Jan. 06, 2017) ......................... 44

*Gen. Textile Printing & Processing Corp. v. Expromtorg Intl. Corp.*,
862 F. Supp. 1070 (S.D.N.Y. 1994) .................................... 43

*Giordano v. UBS, AG*,
134 F. Supp. 3d 697 (S.D.N.Y. 2015) .................................. 33

*Grafstein v Schwartz*,
100 A.D.3d 699 (2d Dep't 2012) .................................... 41, 42

*Gulf Oil Corp. v. Gilbert*,
330 U.S. 501 (1947) ..................................................... 36

*Inv. Bank PSC v. Al Tadamun Glass & Aluminium Co. LLC*,
77 Misc. 3d 1202(A), 2022 WL 16942817 (Sup. Ct. N.Y. Cnty. Nov. 14, 2022) ...................................... 26

*JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*,
412 F.3d 418 (2d Cir. 2005) ....................................... 25, 42

*Khalife v. Audi Saradar Priv. Bank SAL*,
129 A.D.3d 468 (1st Dep't 2015) ...................................... 39

*Kreit v Byblos Bank S.A.L.*,
2023 WL 6977448 (S.D.N.Y. Oct. 22, 2023) .............................. *passim*

*LaSala v. UBS, AG,*
510 F. Supp. 2d 213 (S.D.N.Y. 2007) .................................................. 37

*Licci ex rel Licci v. Lebanese Canadian Bank, S.A.L.,*
732 F.3d 161 .......................................................................................... 25

*Licci v. Lebanese Canadian Bank, SAL,*
20 N.Y.3d 327 (2012) ......................................................................... 24

*Malaeb v. Bankmed S.A.L.,*
2021 WL 1925638 (Sup. Ct. N.Y. Cnty. May 13, 2021)............. *passim*

*Manichaean Cap., LLC v. SourceHOV Holdings, Inc.,*
2021 WL 276674 (S.D.N.Y. Jan. 27, 2021) ........................................ 40

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.,*
84 F.3d 560 (2d Cir. 1996) ................................................................. 31

*Nat'l Union Fire Ins. Co. of Pittsburgh, P.A. v. UPS Supply
Chain Sols., Inc.,*
74 F.4th 66 (2d Cir. 2023) ................................................................. 16

*Piper Aircraft Co. v Reyno,*
454 US 235 (1981) .............................................................................. 35

*Przewozman v. Qatar Charity,*
2023 WL 2562537 (E.D.N.Y. Mar. 17, 2023) .............................. 27, 28

*Raad v. Bank Audi S.A.L.,*
2024 WL 967172 (S.D.N.Y. Mar. 5, 2024) ......................... 2, 20, 23, 26

*Silverman v. Miranda,*
116 F. Supp. 3d 289 (S.D.N.Y. 2015), aff'd sub nom., 725
F. App'x 79 (2d Cir. 2018) ................................................................. 41

*Skyline Steel, LLC v. PilePro,*
LLC, 2015 WL 5076695 (S.D.N.Y. Aug. 27, 2015) ........................... 41

*Smith v. United States,*
554 F. App'x 30 (2d Cir. 2013) .......................................................... 46

*Sonera Holding B.V. v. Cukurova Holding A.S.,*
 750 F.3d 221 (2d Cir. 2014) ................................................... 18

*Terio v Michaud,*
 2011 WL 2610586 (S.D.N.Y. June 15, 2011) ...................................... 45

*Trans Atlantic Imaging S.A.L. v. Banque MISR Liban
 S.A.L.,*
 2021 WL 2435887 (Sup. Ct. N.Y. Cnty. June 15, 2021).............. 18, 24

*Tuff v Vil. of Yorkville Police Dep't,*
 2017 WL 2790529 (N.D.N.Y. June 27, 2017) ...................................... 45

*Viacom Int'l, Inc. v. Melvin Simon Productions, Inc.,*
 774 F. Supp. 858 (S.D.N.Y. 1991) ....................................................... 40

*VisionChina Media, Inc. v. S'holder Representative Servs.,
 LLC,*
 109 A.D.3d 49 (1st Dep't 2013) .................................................. 42, 43

*Walden v. Fiore,*
 571 U.S. 277 (2014) ............................................................................ 28

*Wells Fargo Advisors, LLC v. Sappington,*
 884 F.3d 392 (2d Cir. 2018) ............................................................... 32

*Williams v. Beemiller, Inc.,*
 159 A.D.3d 148 (1st Dep't 2018), *aff'd*, 33 N.Y.3d 523
 (2019)..................................................................................................... 28

*Williams v. Beemiller, Inc.,*
 33 N.Y.3d 523 (2019) ........................................................................ 18

## Statutes & Other Authorities

28 U.S.C. § 1291 ...................................................................................... 3

28 U.S.C. § 1332 ...................................................................................... 3

N.Y.C.P.L.R. § 302........................................................................... *passim*

N.Y.C.P.L.R. § 6201(1) ........................................................................ 15

Fed. R. Civ. P. 12(b)(6) ........................................................................ 10

## INTRODUCTION

The district court properly dismissed this suit against two foreign entities—BBAC Bank S.A.L. ("BBAC"), a Lebanese commercial bank, and Assaf Holding Company SAL ("Assaf"), one of BBAC's shareholders—for lack of personal jurisdiction.

Plaintiff-Appellant Ali Mohamad Moussaoui, a Texas resident and dual Lebanese-U.S. national, opened an account with BBAC in Lebanon in 2012. Beginning in 2019, a major financial crisis in Lebanon led banks there, including BBAC, to impose restrictions on the transfers of funds. Moussaoui, unable to transfer his funds to the United States, brought suit against BBAC in Lebanon and subsequently brought this suit.

In addressing the district court, Moussaoui correctly acknowledged that the facts of his case "do not lend [themselves] to an action *in personam.*" A-81–82 at 8:25–9:2. And, the district court agreed, concluding that Moussaoui failed to make a *prima facie* case for personal jurisdiction. As the court explained, Moussaoui attempts to rely on "broad allegations" about BBAC's maintenance of correspondent bank accounts in New York, but under this Court's ruling in *Daou v. BLC Bank, S.A.L.*, 42 F.4th 120 (2d Cir. 2022), that is insufficient to support jurisdiction.

The district court's decision accords with a substantial number of cases decided by New York appellate and trial courts that "have similarly dismissed customer lawsuits arising from Lebanon's financial crisis for lack of personal jurisdiction over Lebanese commercial banks under both New York's long-arm statute and on due process grounds." *Raad v. Bank Audi S.A.L.*, 2024 WL 967172, at *8 (S.D.N.Y. Mar. 5, 2024) (collecting cases); *see also, e.g.*, *Kreit v Byblos Bank S.A.L.*, 2023 WL 6977448 (S.D.N.Y. Oct. 22, 2023); *Elghossain v. Bank Audi S.A.L.*, 2023 WL 6390160 (S.D.N.Y. Sept. 29, 2023); *Chaar v. Arab Bank P.L.C.*, 220 A.D.3d 479 (1st Dep't 2023).

Because Moussaoui fails to make a *prima facie* case for jurisdiction, the district court also properly exercised its discretion in denying his request for jurisdictional discovery. Furthermore, as the district court recognized, dismissal is warranted under the doctrine of *forum non conveniens*. Lebanon provides the appropriate, if not exclusive, forum for resolving this dispute, which—among other things—requires the analysis of Lebanese law and implicates matters presently before, and of great significance to, Lebanese courts.

Finally, the district court also did not err by rejecting Moussaoui's pre-judgment effort to attach money in BBAC's correspondent banking accounts in New York. In addition to failing to establish jurisdiction, Moussaoui also failed to carry his heavy burden to satisfy the other demanding criteria for attachment.

## STATEMENT OF JURISDICTION

The district court had subject-matter jurisdiction under 28 U.S.C. § 1332. On September 14, 2023, the district court granted the defendants' motion to dismiss, SPA-1, and entered final judgment, SPA-16. Plaintiff timely noticed his appeal. A-711. This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1. Whether the district court properly dismissed for lack of personal jurisdiction where plaintiff failed to make a *prima facie* showing under N.Y.C.P.L.R. § 302(a)(1) and, alternatively, the exercise of jurisdiction does not comport with constitutional due process.

2. Whether the doctrine of *forum non conveniens* provides an alternate ground for dismissal where none of the parties are New York residents, the dispute arose in Lebanon, adjudicating the

merits implicates issues of public significance in Lebanon, and the parties have agreed that courts in Lebanon have jurisdiction.

3. Whether the district court properly exercised its discretion to deny pre-judgment attachment because plaintiff failed to demonstrate probable success on the merits and a genuine need for attachment.

4. Whether the district court properly exercised its discretion to deny jurisdictional discovery where plaintiff failed to make a *prima facie* case for jurisdiction.

## STATEMENT OF THE CASE

Plaintiff-Appellant Ali Mohamad Moussaoui, a Texas resident, brought this suit in the Southern District of New York against two Lebanese entities, Defendants-Appellees Bank of Beirut and the Arab Countries, also known as BBAC Bank S.A.L., and Assaf Holding Company SAL (collectively, "Defendants"). Moussaoui holds a savings account at BBAC in Lebanon, and Assaf is a shareholder in BBAC. District Judge Edgardo Ramos entered orders: (1) denying Moussaoui's *ex parte* motion for a pre-judgment order of attachment, (2) granting Defendants' motion to dismiss for lack of personal jurisdiction, and (3) denying Moussaoui's request for jurisdictional discovery. A-70 at

4

8:11–12; SPA-1; SPA-14. Moussaoui appeals from those orders, none of which are reported in published opinions.

### A. Factual Background.

#### 1. The Parties.

Moussaoui is a dual Lebanese-U.S. national who resides in Texas. SPA-2; A-10 ¶ 1.

BBAC is a commercial bank in Lebanon. SPA-2. It does not—and is not licensed to—conduct business in New York or anywhere else in the United States. A-143 ¶ 6; *see also* SPA-2. BBAC does not have any agents, employees, representatives, branches, or offices in New York. A-143 ¶¶ 4, 6. BBAC has correspondent banking relationships with JP Morgan Chase Bank, N.A. ("Chase") and Citibank, N.A. ("Citibank") in New York. SPA-2.[2]

---

[2] Correspondent banking refers to the common practice of financial institutions maintaining accounts at other banks around the world, including in New York, to facilitate foreign currency transactions. A-143 ¶ 7. Correspondent accounts are not customer or transaction specific. *Id.*; *see generally Kreit v Byblos Bank S.A.L.*, 2023 WL 6977448, at *2 (S.D.N.Y. Oct. 22, 2023) ("A correspondent bank account is a domestic bank account held by a foreign bank, similar to a personal checking account used for deposits, payments and transfers of funds. Correspondent accounts facilitate the flow of money worldwide, often for transactions that otherwise have no connection to New York.") (quoting *Licci ex rel Licci v. Lebanese Canadian Bank, S.A.L.*, 732 F.3d 161, 165 n.3) (2d Cir. 2013).

Assaf is a Lebanese holding company that owns stock in BBAC. SPA-2. It has no relationship with Moussaoui. A-141 ¶ 6. It does not conduct any business in New York or anywhere else in the United States. A-140-141 ¶ 4; A-637 ¶ 4. Moussaoui alleged that Assaf maintains funds in correspondent accounts in New York. A-25. Assaf submitted declarations explaining that it does not maintain assets, bank accounts, or correspondent accounts in New York. A-141 ¶ 5; A-638 ¶ 10.

### 2. The Parties' Banking Activity.

In 2012, while living in Lebanon, Moussaoui opened a fixed term savings account with BBAC. SPA-2; A-21 ¶ 80. The relationship between BBAC and Moussaoui is governed by an Arabic language banking agreement that includes a forum-selection clause establishing that the Beirut Courts have jurisdiction over any dispute arising under the agreement and providing that "the Bank alone" may refer matters to any other judicial authority with jurisdiction. A-655 ¶ 29; A-611 ¶ 29; *see* A-169–170 ¶¶ 8–11.

As the district court noted, Moussaoui alleged that prior to 2019, "he used New York banks to transfer money to his BBAC account in Lebanon" and that "BBAC transferred money to him using banks in New

York." SPA-3 (citing A-21 ¶¶ 84–85). But, as the court further noted, BBAC's declarations explained that bank records show otherwise: Moussaoui funded his BBAC account by depositing US dollars in checks from other Lebanese banks. A-144 ¶ 8; *see* SPA-3 & n.5. Bank records show no "transfers outside" of Lebanon either to or from Moussaoui's account. A-144 ¶¶ 9–10; *see* A-623 ¶¶ 4–6. Specifically, BBAC submitted declarations explaining—and bank records showing—that Moussaoui's funds never transited accounts in New York. A-623 ¶¶ 4–5, 629–630; *see also* A-144 ¶¶ 8–10. Moussaoui did not submit any documentary evidence to the contrary.

As the district court explained, "since October 2019, Lebanon has suffered from a volatile political and economic situation, which has impacted its banking sector." SPA-4; A-145 ¶¶ 16–17. In particular, the Central Bank of Lebanon "has restricted withdrawals and transfers of foreign currency abroad except in limited circumstances that are specifically authorized, including payments for the import of supplies, tuition payments, and medical emergencies." SPA-4–5; A-145 ¶ 17.

In 2020, "Moussaoui directed BBAC to close his account and wire the principal amount to his Chase Bank account in the United Sates

through BBAC's correspondent accounts in New York." SPA-3. In light of the conditions created by the financial crisis, BBAC declined to wire the funds outside of Lebanon but offered to issue Moussaoui a check drawn against the Central Bank of Lebanon. SPA-4. Moussaoui declined the check. SPA-4.

Moussaoui's suit alleges, without any asserted basis, that BBAC has improperly transferred funds to Assaf in New York. SPA-2 n.3; A-16 ¶ 50. Defendants have shown that no such transfers took place. SPA-2 n.3. Assaf submitted evidence that it did not, and could not have, received or held funds in New York because it does not maintain bank accounts there. A-141 ¶¶ 5, 9. Defendants also submitted declarations explaining that all amounts transferred from BBAC to Assaf have been in the form of dividend payments effectuated in Lebanese Pounds. A-141 ¶ 8. The declarations also explain that Assaf "has not received any USD from BBAC during the period described in the Complaint, let alone transfers from New York correspondent accounts." A-141 ¶ 9.

### 3. Moussaoui's First-Filed Case in Lebanon.

In January 2022, Moussaoui initiated proceedings against BBAC and Assaf in the Court of First Instance in Lebanon, which are ongoing.

8

A-26–27 ¶¶ 126, 137. There, as here, Moussaoui's theory is that BBAC wrongfully refused to transfer his funds to the United States. SPA-5; A-26 ¶ 126; A-28 ¶ 149.

### B. Prior Proceedings.

Moussaoui initiated this case by filing his complaint under seal and, one month later, filing an *ex parte* motion for pre-judgment attachment of funds allegedly held in New York by Defendants. ECF No. 12; A-2–3. The district court held an *ex parte* hearing, and after hearing argument from Moussaoui's counsel, the court denied the attachment motion. A-63, A-70. The district court found that Moussaoui failed to show either a likelihood of success on the merits or any need for attachment. A-70–71 at 8:11–9:13.

The district court subsequently unsealed the complaint, which alleged claims for conversion and fraudulent conveyance based on BBAC's denial of Moussaoui's request to wire funds from Lebanon to the United States. A-28-30. At a court conference regarding Defendants' anticipated motion to dismiss for lack of personal jurisdiction, *forum non conveniens*, and for failure to state a claim, counsel for Moussaoui maintained that his client was "not asserting personal jurisdiction based

upon New York's long-arm statute" and "merely" asserting *in rem* jurisdiction. A-81, A82 at 9:10–12. Soon after, Moussaoui filed an amended complaint expressly alleging *quasi in rem* jurisdiction as the basis for jurisdiction. A-10, A-13–14 ¶¶ 32–33; *see also* SPA-9 n.8.[3]

Defendants moved to dismiss the amended complaint, ECF No. 40, and the district court granted the motion based on lack of personal jurisdiction. SPA-9. The court also concluded that Defendants "set forth compelling arguments that, even if the Court could exercise personal jurisdiction over them, this is an improper forum pursuant to the doctrine of *forum non conveniens*." SPA-13. Because the court granted "the defendants' motion to dismiss for lack of personal jurisdiction, it [did] not address their arguments regarding whether Moussaoui's claims are otherwise sufficiently pleaded pursuant to Rule 12(b)(6)." SPA-14.

The district court denied Moussaoui's request for jurisdictional discovery on the ground that he "failed to make out a *prima facie* case for

---

[3] The amended complaint added J.P. Morgan Chase and Citibank as defendants. A-39–40 ¶¶ 251–260. Before the district court ruled on Defendants' motion to dismiss, Moussaoui voluntarily dismissed, with prejudice, his claims against those U.S. banks. ECF No. 62.

jurisdiction." SPA-15. The district court further explained that such discovery "would expend significant efforts and would be futile." SPA-15.

## SUMMARY OF ARGUMENT

Starting in 2019, in response to Lebanon's deepening banking crisis, Lebanese banks agreed to implement measures to stop a run on the banks, including restrictions on the transfer of U.S. dollars out of Lebanon. Nevertheless, Moussaoui, a dual Lebanese-U.S. national residing in Texas, sought to have BBAC send millions of U.S. dollars from Lebanon to the United States. BBAC declined the international transfer, offering instead to issue Moussaoui a check written against the Central Bank of Lebanon. Moussaoui rejected the offer, and filed suit in Lebanon against BBAC and its shareholder, Assaf. Later, he initiated this lawsuit in the Southern District of New York, seeking the same relief against the same defendants.

**I.** The district court followed this Court's precedent and dismissed the suit. On appeal, Moussaoui seeks to frame this litigation as a novel case. It is not. As the district court explained, this Court's decision in *Daou v. BLC Bank, S.A.L.*, 42 F.4th 120 (2d Cir. 2022), "controls here." SPA-11.

In *Daou*, as here, the plaintiffs alleged that their US dollars had been transmitted through correspondent accounts in New York and then

that, amid the Lebanese financial crisis, the bank defendants refused to send the plaintiffs' funds from Lebanon to the United States. This Court found those allegations insufficient to establish personal jurisdiction—explaining that correspondent banking activity does not support jurisdiction over a Lebanese bank defendant unless the plaintiff's alleged *injury* is related to specific transfers through New York accounts. *Daou*, 42 F.4th at 131-32.

As in *Daou*, Moussaoui does not, and cannot, connect his alleged injury to specific correspondent banking transfers. His inability to transfer his funds out of Lebanon into the United States is not tied to the defendants' maintenance of correspondent bank accounts in the United States. *See* SPA-11 (recognizing that any injury stems from BBAC's rejection of Moussaoui's transfer request in Lebanon amid the financial crisis). Moussaoui's other jurisdictional allegations are unsubstantiated, disproven by documentary evidence, and untethered to Moussaoui's alleged harm. This Court should therefore affirm dismissal for lack of personal jurisdiction.

**II.** Furthermore, even if this Court could exercise personal jurisdiction over BBAC and Assaf, New York "is an improper forum

pursuant to the doctrine of *forum non conveniens*." SPA-13. The relevant factors are well established: (1) whether deference is owed to plaintiff's choice of forum; (2) whether there is an adequate alternate forum; and (3) whether the private and public interests implicated favor the forum. *Aenergy, S.A. v. Republic of Angola*, 31 F.4th 119, 128 (2d Cir. 2022). Here, all compel dismissal.

As the district court recognized, little deference is owed to the forum choice of a non-resident of New York who wishes to bring suit against foreign entities based on a bank account he opened outside the United States. This is especially true where, as here, the underlying banking agreement shows that—at a minimum—the parties "anticipated that disputes arising from it would be litigated in Lebanon." SPA-13. Moreover, it is clear that "Lebanon has a unique, important public policy interest in hearing this dispute," while New York does not. SPA-14. The district court correctly found that these were "compelling" arguments for dismissal under *forum non conveniens*. SPA-13. While this Court need not reach this issue, it provides an independent basis for dismissal of the amended complaint.

**III.** The district court did not abuse its discretion in denying Moussaoui's request for jurisdictional discovery. This Court recognizes that district courts have broad discretion to manage discovery, and authorizes them to deny jurisdictional discovery where, as here, the plaintiff fails to make out even a *prima facie* case for jurisdiction. Moussaoui insists that plaintiffs "should" be able to obtain jurisdictional discovery even when they fail to reach that threshold. That is not the law. It is certainly not a basis for concluding that the district court abused its discretion. This Court should therefore affirm the denial of discovery.

**IV.** The district court also did not abuse its discretion in denying Moussaoui's motion for attachment. Moussaoui had the heavy burden of proffering evidence that he was entitled to the extraordinary remedy of pre-judgment attachment. He failed to do so. As the district court explained, Moussaoui offered no credible evidence to establish his likelihood of success on the merits or his need for an attachment order—both of which are required elements for attachment under N.Y.C.P.L.R. § 6201(1).

On appeal, Moussaoui ignores the district court's primary grounds for denying the attachment motion—his failure to show a probability of

succeeding on the merits. Focusing entirely on his asserted need for an order, Moussaoui simply claims (without support) that BBAC is insolvent, maintains his funds in its New York correspondent accounts, and is likely to evade judgment. These unsubstantiated claims are contradicted by Defendants' declarations and, as the district court recognized, cannot support the drastic remedy of an attachment order.

V.   This Court should affirm the denial of attachment and dismissal of this suit.

## STANDARD OF REVIEW

"In an appeal from a dismissal for lack of personal jurisdiction," this Court reviews "the district court's legal conclusions de novo and its factual findings for clear error." *Nat'l Union Fire Ins. Co. of Pittsburgh, P.A. v. UPS Supply Chain Sols., Inc.*, 74 F.4th 66, 71 (2d Cir. 2023). The Court reviews "a district court's denial of jurisdictional discovery for abuse of discretion, always mindful that a district court has wide latitude to determine the scope of discovery." *El Omari v. Int'l Crim. Police Org.*, 35 F.4th 83, 94 (2d Cir. 2022). Likewise, the Court reviews "a district court's ruling on a request for an order of attachment for abuse of

discretion." *EM Ltd. v. Republic of Argentina*, 473 F.3d 463, 472 (2d Cir. 2007).

## ARGUMENT

### I. The District Court Correctly Held That Defendants Are Not Subject to Personal Jurisdiction in New York.

The district court correctly held that Defendants are not subject to either *in personam* or *quasi in rem* jurisdiction in New York. SPA-9.

#### A. New York Law Precludes the Exercise of Personal Jurisdiction Over BBAC and Assaf.

##### 1. Defendants Are Not Subject to *In Personam* Jurisdiction Under New York's Long-Arm Statute.

As counsel for Moussaoui conceded on the record, the facts of this case "do not lend [themselves] to an action *in personam*." A-81–82 at 8:25–9:2.[4] The district court concluded the same, holding that "the action is properly dismissed for lack of personal jurisdiction." SPA-9. This Court should affirm.

---

[4] Consistent with this position, Moussaoui's original complaint and amended complaint asserted only *quasi in rem* jurisdiction and did not invoke *in personam* jurisdiction. ECF No. 7 ¶¶ 28–29; A-13 ¶¶ 32–33; *see also* A-81–82 at 8:16–18 (acknowledging that Moussaoui was "not asserting personal jurisdiction based upon New York's long-arm statute"). Nonetheless, in response to Defendants' motion to dismiss, Moussaoui invoked *in personam* jurisdiction. *See* SPA-9 n.8. The district court considered and rejected the argument. SPA-9.

To establish *in personam* jurisdiction under New York law a party must demonstrate that "two requirements are satisfied: the action is permissible under the long-arm statute (CPLR 302) and the exercise of jurisdiction comports with due process." *Williams v. Beemiller, Inc.*, 33 N.Y.3d 523, 528 (2019); *see Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 224 (2d Cir. 2014) (courts first "determine[s] whether the defendant is subject to jurisdiction under the law of the forum state—here, New York").

Under N.Y.C.P.L.R. § 302(a)(1), courts may only "exercise personal jurisdiction over [a] non-domiciliary" that transacts "business within the state" "[a]s to a cause of action arising from" those transactions. Where, as here, a plaintiff premises long-arm jurisdiction on correspondent banking activity, it must allege facts demonstrating both the foreign bank's "purposeful" use of its correspondent account *and* a "nexus or substantial relationship between the claim and use of the correspondent account." *Trans Atlantic Imaging S.A.L. v. Banque MISR Liban S.A.L.*, 2021 WL 2435887, at *2 (Sup. Ct. N.Y. Cnty. June 15, 2021); *see also Daou v. BLC Bank, S.A.L.*, 42 F.4th 120, 130 (2d Cir. 2022); *Malaeb v.*

*Bankmed S.A.L.*, 2021 WL 1925638, at *5 (Sup. Ct. N.Y. Cnty. May 13, 2021).

The district court correctly held that Moussaoui failed to establish the requisite purposefulness because "the record does not show that the defendants consistently or systematically transacted business in New York." SPA-10. This is unsurprising given that, as the district court noted, "BBAC is a Lebanese commercial bank that is not licensed to conduct business anywhere in the United States" and it "neither operates nor solicits business in New York." SPA-2. Assaf also has no connection to New York; it is a Lebanese holding company that has no operations, employees, bank accounts, or assets in New York. A-140 ¶ 4; A-637 ¶ 4. On appeal, Moussaoui identifies no basis for refuting the district court's findings. He simply states in conclusory fashion that "BBAC transacted business within New York." Appellant's Br. 16.

The district court also held that Moussaoui cannot establish N.Y.C.P.L.R. § 302(a)(1)'s second prong—the nexus prong of New York's long-arm statute—because "Moussaoui's inability to withdraw his funds in U.S. dollars was not caused by the defendants' possession of correspondent bank accounts in the United States, rather, the record

shows that it was precipitated by the banking crisis and Lebanon's corresponding regulations within its banking sector." SPA-11.

The district court's holding regarding the lack of nexus follows this Court's decision in *Daou*, as well as findings by numerous federal and state courts that have "similarly dismissed customer lawsuits arising from Lebanon's financial crisis for lack of personal jurisdiction over Lebanese commercial banks under both New York's long-arm statute and on due process grounds." *Raad v. Bank Audi S.A.L.*, 2024 WL 967172, at *8 (S.D.N.Y. Mar. 5, 2024) (collecting cases); *see also Kreit*, 2023 WL 6977448, at *6 (recognizing that "in the wake of *Daou*, the courts in [the Southern District of New York] have not hesitated to dismiss for lack of personal jurisdiction claims against Lebanese banks for their failure to return U.S. dollar deposits to the plaintiff's accounts in the United States where jurisdiction is predicated upon a foreign bank's use of correspondent accounts in New York").

In *Daou*, plaintiffs sued Lebanese banks for breach of contract and unjust enrichment, alleging the banks unlawfully declined to transfer funds in plaintiffs' accounts to the United States. 42 F.4th at 125. Plaintiffs argued that the banks "advertised the availability of their New

York correspondent accounts to potential customers and used those accounts to transfer some of the millions of dollars in the [plaintiffs'] accounts into Lebanon in the first instance." *Id.* at 132. This Court found no long-arm jurisdiction, stressing that the "connection between those past transactions and the claims" was inadequate. *Id.*

The *Daou* Court explained that to support long-arm jurisdiction, a "transaction made through [a correspondent] account" would need to be "part of the alleged unlawful course of conduct underlying the cause of action set out in the complaint." *Id.* at 130. But the plaintiffs did not allege that the banks used any "specific transaction through a New York correspondent account in the course of bringing about the injuries on which the claims are predicated—namely, that [plaintiffs'] USD remained in Lebanon." *Id.* at 132; *see also Kreit*, 2023 WL 6977448, at *5 (recognizing that in *Daou* the "allegation that the defendant banks had used the correspondent accounts to pay out wire transfers in the past, and … that the banks would have used the correspondent accounts to pay out the requested wire transfers that were never effected, were, separately and together, insufficient to establish the requisite nexus").

Moussaoui attempts to distinguish *Daou* on the ground that "the harm alleged by Dr. Moussaoui in the present matter arises from BBAC's purposeful depleting of its supply of its finite USD through its New York correspondent banks for the benefit of insiders in violation of Dr. Moussaoui's rights." Appellant's Br. 20. That argument fails.

There is no distinction between the alleged injuries suffered by Moussaoui and the Daous. In an effort to recharacterize the source of his alleged harm, Moussaoui engages in unsupported speculation about the "purposeful depleting" of BBAC's supply of U.S. dollars. But Moussaoui's complaint clearly alleged that BBAC caused him harm by "refus[ing] to wire Plaintiff's" funds from Moussaoui's account in Lebanon "to Plaintiff's US Chase Bank Account, through BBAC's correspondent accounts in" New York. A-22 ¶ 92. The plaintiffs in *Daou* alleged the very same harm—that the defendant banks unlawfully refused to transfer their funds from Lebanon. 42 F.4th at 126–27.[5]

---

[5] To the extent Moussaoui's argument is predicated on a contention that *his* funds are held in correspondent accounts in New York, his argument is flatly contradicted by the record evidence. Moussaoui opened bank accounts in Lebanon while living in that country in 2012, and BBAC has "no evidence of any New York correspondent bank accounts transfers relating to Moussaoui." SPA-2, 3 n.5; A-629–630; *see also* A-623 ¶¶ 4–5;

Other recent cases have presented similar fact patterns—including the same harm—and have likewise been dismissed. Most recently, in *Raad*, 2024 WL 967172, the Southern District of New York granted a Lebanese bank's motion to dismiss for lack of personal jurisdiction because the "Plaintiffs' inability to withdraw funds in U.S. dollars from their accounts in Lebanon was not caused by Defendant's possession of correspondent bank accounts in the United States or the prior transfers into Plaintiffs' New York accounts." *Id.* at *6. "Rather, the record shows that Defendant's alleged 'breach' of the agreement was precipitated by *Lebanon's* banking crisis and *Lebanon's* corresponding regulations within *Lebanon's* banking sector." *Id.* at *6; *see id.* at *8 (explaining that "the Amended Complaint does not include any allegation that Defendant's New York correspondent accounts are in any way related to—or caused—the injuries on which their claim is predicated").

Likewise, in *Elghossain v. Bank Audi S.A.L.*, the Southern District of New York held that the bank defendant's use of "New York correspondent accounts to wire money to Plaintiffs" was "insufficient to

---

A-144 ¶ 10 (evidence showing Moussaoui's funds never went to, or even passed through, any New York account).

establish personal jurisdiction" in New York, "because Plaintiffs' claims turn on the measures that [the bank] took in Lebanon to ensure that USD deposits remained in that country, and the connection between the correspondent accounts and those claims is merely coincidental." 2023 WL 6390160, at *13 (S.D.N.Y. Sept. 29, 2023) (quotations and citation omitted). *See also Kreit*, 2023 WL 6977448, at *6 (granting motion to dismiss for lack of personal jurisdiction under N.Y.C.P.L.R. § 302(a)(1) because plaintiff's claim—for the bank's "failure to transfer money" back to the United States—"occurred in Lebanon"); *Trans Atlantic Imaging S.A.L.*, 2021 WL 2435887, at *1 (denying attachment of New York correspondent bank accounts for lack of personal jurisdiction because accounts and transfers had "no articulable nexus" to the "defendant bank's refusal to honor plaintiffs' request to withdraw such funds on deposit by wire transferring the United State dollars to plaintiffs' account(s) in the United States"); *Malaeb*, 2021 WL 1925638, at *5 (dismissing for lack of personal jurisdiction because the Lebanese bank defendant's use of correspondent accounts was "incidental" to the claims asserted and the not the "*actus reus* of [the bank's] liability").

Moussaoui fails to address, let alone distinguish, any of those similar cases. Instead, he attempts to rely upon readily distinguished cases involving money laundering and terrorism financing. Appellant's Br. at 17–20 (invoking, for example, *Licci v. Lebanese Canadian Bank, SAL*, 20 N.Y.3d 327 (2012)). The district court correctly explained that such cases are inapposite because they "involve situations wherein the harm incurred by plaintiffs was caused by the [correspondent banking] transfers themselves." SPA-12. Such facts are wholly absent here. As in *Daou*, Moussaoui simply does not—and cannot—connect his alleged injury (his inability to withdraw funds from Lebanon) to BBAC's correspondent banking, let alone any specific transactions. SPA-11 (explaining that Moussaoui fails to identify any "'alleged actual transaction made' through these accounts that 'formed part of the alleged unlawful course of conduct underlying the cause of action set out in the complaint'" (quoting *Daou*, 42 F.4th at 130)). *See, e.g.*, *Daou.*, 42 F.4th at 130–31 (distinguishing *Licci*); *Malaeb*, 2021 WL 1925638, at *7 (distinguishing *Licci*).

The district court correctly held that *Daou* controls, requiring dismissal of Moussaoui's claims.

### 2. Defendants Are Not Subject to *Quasi In Rem* Jurisdiction Under New York Law.

The district court correctly held that "Moussaoui's *quasi in rem* theory also fails[.]" SPA-12. On appeal, Moussaoui does not raise, and thus has waived, any argument concerning *quasi in rem* jurisdiction. *See, e.g.*, *JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*, 412 F.3d 418, 428 (2d Cir. 2005) ("Arguments not made in an appellant's opening brief are waived even if the appellant pursued those arguments in the district court or raised them in a reply brief.").

Even if Moussaoui had preserved the argument, however, it would still fail because "*quasi in rem* jurisdiction is not proper where an order of attachment is not in place and the property at issue has not otherwise been seized." *Raad v. Bank Audi S.A.L.*, 2024 WL 967172, at \*8 (S.D.N.Y. Mar. 5, 2024) (collecting cases); *Inv. Bank PSC v. Al Tadamun Glass & Aluminium Co. LLC*, 77 Misc. 3d 1202(A), 2022 WL 16942817 (Sup. Ct. N.Y. Cnty. Nov. 14, 2022) (*quasi in rem* jurisdiction requires "an actual (not merely potential) attachment of New York property"). Here, "there is no such order of attachment or property seizure before the Court in the instant case" so "*quasi in rem* jurisdiction is not proper[.]" SPA-13.

Moreover, as the district court explained, "the funds in the defendants' New York accounts are not tied to the claims set out in the complaint" and therefore cannot support the exercise of *quasi in rem* jurisdiction. SPA-11–13. *Cf. Chaar v. Arab Bank P.L.C.*, 220 A.D.3d 479, 480 (1st Dep't 2023) (affirming dismissal for lack of *quasi in rem* jurisdiction in similar circumstances, noting that the correspondent bank accounts "have no relationship to the cause of action"), reargument denied, 2024 WL 677668 (1st Dep't Feb. 20, 2024).

In short, the district court correctly found that *quasi in rem* jurisdiction is lacking under New York law, and Moussaoui has not challenged that determination.

### B. The Exercise of Jurisdiction Does Not Comport with Constitutional Due Process.

Even if Moussaoui could satisfy New York's statutory requirements for personal jurisdiction, his suit must be dismissed because the exercise of jurisdiction over the Defendants cannot be reconciled with the requirements of constitutional due process. *See Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010). The district court had no reason to reach this argument, but it supplies an independent ground for affirming the district court's decision. *Id.*

27

Because there is no basis for general jurisdiction here, the due process analysis is case-specific, requiring "a connection between the defendant's minimum contacts with the forum and the claim brought." *Przewozman v. Qatar Charity*, 2023 WL 2562537, at \*15 (E.D.N.Y. Mar. 17, 2023) (citing *Goodyear Dunlop Tires Operations S.A. v. Brown*, 564 U.S. 915, 919 (2011)). If minimum contacts are found, the court further considers "whether the assertion of personal jurisdiction would comport with fair play and substantial justice." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)).

### 1. Moussaoui Does Not Satisfy The "Minimum Contacts" Test.

To satisfy the "minimum contacts" test, the plaintiff must show that the defendant "purposefully directed [its] activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp.*, 471 U.S. at 472 (internal quotation marks and citations omitted); *see also Walden v. Fiore*, 571 U.S. 277, 283–84 (2014). Furthermore, the defendant's "minimum contacts" with New York must be such that it can "reasonably anticipate being haled into court there[.]" *Williams v. Beemiller, Inc.*, 159 A.D.3d

28

148, 156 (1st Dep't 2018), *aff'd*, 33 N.Y.3d 523 (2019) (quoting *World-Wide Volkswagen Corp. v Woodson*, 444 US 286, 291, 297 (1980)).

As we have discussed, Moussaoui's claims do not stem "from alleged injuries that arise out of or relate to" any New York activity. *Burger King Corp.*, 471 U.S. at 472 (quotation marks and citations omitted). This case is similar to *Malaeb*, where the Supreme Court of New York, New York County held that imposing personal jurisdiction over the Lebanese bank defendant would not comport with due process. There, the plaintiff claimed "his deposits with, and withdrawals from, his accounts with [the Lebanese bank] defendants were effectuated through their New York correspondent accounts," 2021 WL 1925638, at *6, before the banks "closed off" access, refusing to allow him "to withdraw or transfer his USD outside Lebanon," *id.* at *3. The court held that "due process preclude[d] the exercise of personal jurisdiction over the banks" because they "could not have reasonably foreseen being sued in New York due to this routine correspondence activity." *Id.* at *8–9.

Similarly, in *Chaar v. Arab Bank, PLC*, 2022 WL 3104606 (Sup. Ct. N.Y. Cnty. Aug. 3, 2022), the plaintiffs alleged the Lebanese bank defendants improperly converted or fraudulently transferred their funds.

*Id.* at *1–2. The New York Supreme Court declined to exercise jurisdiction and denied attachment for lack of "minimum contacts" because the plaintiffs' allegations that "transmittals of [their] funds" and "investment returns" were routed through the banks' New York correspondent accounts were "insufficient to establish the relationship" necessary for jurisdiction. *Id.* at *3–4. The Appellate Division of the Supreme Court of New York, First Department, affirmed unanimously. *Chaar*, 220 A.D.3d at 480.

Here, BBAC and Assaf could not possibly have anticipated being sued by Moussaoui in New York based on accounts opened in Lebanon that did not involve any transactions through New York correspondent accounts. The argument for dismissal is even stronger here than in *Chaar* because there is no evidence of any transfers through BBAC's correspondent accounts.

### 2. The Exercise of Jurisdiction Here Would Be Unreasonable.

Even if the Defendants had minimum contacts in New York (they do not), the Court must still evaluate whether imposing jurisdiction over them "comports with 'traditional notions of fair play and substantial justice'—that is, whether it is reasonable to exercise . . . jurisdiction

under the circumstances of the particular case." *Chloé*, 616 F.3d at 164 (quoting *Int'l Shoe v. Washington*, 326 U.S. 310, 316 (1945)). "[T]he reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiff's showing on minimum contacts, the less a defendant need show in terms of unreasonableness to defeat jurisdiction." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 569 (2d Cir. 1996) (internal quotations and citations omitted).

Here, Defendants had no reason to foresee being compelled to litigate this matter in New York courts. As the district court stressed, "BBAC is a Lebanese commercial bank that is not licensed to conduct business anywhere in the United States," and "neither operates nor solicits business in New York." SPA-2. Moreover, the parties' dispute is "centered in Lebanon—where Moussaoui is a citizen, where he opened the bank account at issue, where the defendants are located, and where the relevant conduct took place." *Id.* at 14.

The traditional factors that inform the reasonableness analysis make plain that the assertion of jurisdiction would be improper. Being required to litigate in a foreign system—far from the relevant witnesses, documents, and Lebanese law experts—would impose significant

31

burdens on the Defendants, which is a "primary concern" in this analysis. *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cnty.*, 137 S. Ct. 1773, 1780 (2017). Furthermore, while Moussaoui's claims "do not implicate New York" interests, SPA-2, they raise issues that are of great consequence to, and presently being litigated in, Lebanon. Accordingly, as the district court noted, allowing Moussaoui to pursue his case here is at odds with principles of "international comity." SPA-13–14. Lebanon's interest is pronounced, given the crisis from which the lawsuit arises, the involvement of a Lebanese bank, and the questions of Lebanese law to be resolved. *See id.*

For all these reasons, constitutional due process provides an alternative basis for upholding the district court's decision. *See Wells Fargo Advisors, LLC v. Sappington*, 884 F.3d 392, 396 (2d Cir. 2018) (quoting *Headley v. Tilghman*, 53 F.3d 472, 476 (2d Cir. 1995)) (noting that this Court is "free to affirm on any ground that finds support in the record, even if it was not the ground upon which the trial court relied").

## II. *Forum Non Conveniens* Provides an Independent Basis for Affirming Dismissal of Moussaoui's Suit.

Dismissal of Plaintiff's suit is also properly affirmed based on *forum non conveniens*. As the district court explained, BBAC and Assaf "set

forth compelling arguments that, even if the Court could exercise personal jurisdiction over them, this is an improper forum pursuant to the doctrine of *forum non conveniens*." SPA-13. Courts evaluating *forum non conveniens*: "(1) determine the degree of deference properly accorded the plaintiff's choice of forum; (2) consider whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute; and (3) balance the private and public interests implicated in the choice of forum." *Aenergy, S.A. v. Republic of Angola*, 31 F.4th 119, 128 (2d Cir. 2022), *cert. denied*, 143 S. Ct. 576 (2023) (quoting *Celestin v. Caribbean Air Mail, Inc.*, 30 F.4th 133, 145 (2d Cir. 2022)). Courts also consider whether the parties have agreed to a forum-selection clause. *See Giordano v. UBS, AG*, 134 F. Supp. 3d 697, 701–04 (S.D.N.Y. 2015) (evaluating the private and public interest factors in conjunction with the parties' enforceable forum-selection clause).

Here, the district court stressed that "there is a strong basis to conclude that interests in international comity are hampered by permitting Moussaoui, who is not a New York resident, to pursue claims arising out of a dispute centered in Lebanon—where Moussaoui is a citizen, where he opened the bank account at issue, where the defendants

are located, and where the relevant conduct took place." SPA-13–14. The district court correctly found that "Moussaoui's claims likely require an analysis of Lebanese law" and that "the record shows that Lebanese courts are able and uniquely suited to do so." SPA-14. Indeed, the court recognized that "Lebanon has a unique, important public policy interest in hearing this dispute due to the relationship between Moussaoui's claims and the ongoing crisis taking place there." SPA-14. By contrast, New York is not "implicat[ed]," and, indeed, "if every foreign bank customer whose transactions pass through New York correspondent accounts of foreign banks was to litigate in New York, the courts in New York would be swamped with litigation having limited connection to the state." SPA-14.

Furthermore, the contract between the Bank and Moussaoui mandates that the dispute be resolved in Beirut by providing "the Bank alone" with the authority to bring the dispute to any other judicial authority. A-169–170 ¶¶ 8–9; A-611 ¶ 29. This arguably suffices to warrant dismissal.[6] *See* SPA-7 (citing *Atl. Marine Const. Co. v. U.S. Dist.*

---

[6] Moussaoui maintains that the clause providing for jurisdiction in Beirut courts is permissive rather than mandatory—allowing, but not requiring,

*Court for W. Dist. of Texas*, 134 S. Ct. 568, 581 (2013)). But even assuming the forum-selection provision is not dispositive, it establishes that the parties agreed to make Lebanon a proper jurisdiction for resolution of this dispute. At a minimum, as the district court noted, that suggests the reasonableness of dismissing in favor of the Lebanese forum. SPA-13.

On appeal, Moussaoui argues that dismissal is not warranted under *forum non conveniens* because he "is an American citizen who has resided in the United States for 28 of the last 32 years." Appellant's Br. 22–23. But Moussaoui has never claimed to reside in, or have other personal connections to, the New York forum and, as the district court explained, his "claims do not implicate New York." SPA-2. Courts give "little deference" when the plaintiff's "choice of forum was made for tactical purposes and not from a *bona fide* connection to th[e] district." *In re Fosamax Prods. Liability Litig.*, 2009 WL 3398930, at *4 (S.D.N.Y Oct. 21, 2009); *see, e.g., Elghossain*, 2023 WL 6390160, at *15 (adopting report and recommendation that plaintiffs' claims are subject to dismissal under

---

Beirut courts to adjudicate. But Moussaoui agrees that the provision goes on to authorize "the Bank alone" to refer maters to other competent judicial authorities. A-645 ¶ 4; A-655 ¶ 29.

*forum non conveniens*, in part, because they "identify no bona fide connection to New York"); *see generally Piper Aircraft Co. v Reyno,* 454 US 235, 255-56 (1981) (explaining that assuming the "home forum has been chosen" because it is "convenient" is "much less reasonable" when plaintiff is not from the forum).

Moussaoui also asserts, without any basis, that "Lebanese financial institutions" are "holding his money" in New York. Appellant's Br. 23. To the contrary, Moussaoui's funds remain in his account with BBAC in Lebanon, consistent with the fact that BBAC does not maintain customer accounts outside of Lebanon. Moreover, the Bank submitted documentary and testimonial evidence that Moussaoui's funds have never gone to, or even passed through, New York. A-629–630; *see also* A-623 ¶¶ 4–5; A-144 ¶ 10.

Finally, Moussaoui asserts that "justice is unattainable in Lebanon." Appellant's Br. 22. But this Court has previously rejected this argument. *See, e.g., Du Quenoy v. Am. Univ. of Beirut*, 828 F. App'x 769, 772–73 (2d Cir. 2020) (affirming dismissal for *forum non conveniens*, in part, because the plaintiff had "not shown that political unrest in Lebanon would defeat the Lebanese judiciary's ability to adjudicate his

claims"); *see also Elghossain*, 2023 WL 6390160, at *15 (recognizing that "the Lebanese judicial system provides an adequate alternative forum").

Moussaoui says nothing about the considerable burdens adjudicating this foreign dispute in New York would impose on the defendants and the courts. *Cf., e.g., Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947) (recognizing relevant factors including "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling; and the cost of obtaining of willing witnesses"). Nor does Moussaoui dispute that any interest New York might have "pales in comparison" with Lebanon's "strong interest in regulating the conduct of banks within its borders." *LaSala v. UBS, AG*, 510 F. Supp. 2d 213, 229 (S.D.N.Y. 2007).

In light of these "compelling arguments," SPA-13, the doctrine of *forum non conveniens* provides an alternate ground on which to affirm the dismissal of Moussaoui's suit.

## III. The District Court Did Not Abuse its Discretion by Denying Moussaoui's Request for Jurisdictional Discovery.

The district court did not abuse its discretion when it denied Moussaoui's request for jurisdictional discovery given Moussaoui "fail[ure] to make out a *prima facie* case of jurisdiction" and declined to

authorize discovery. SPA 14–15. On appeal, Moussaoui insists that he should have been "allowed to conduct jurisdiction discovery even in the absence of a *prima facie* showing as to the existence of jurisdiction." Appellant's Br. 24. But this is not the law: This Court's precedents hold that a "district court" is "well within its discretion" to deny jurisdictional discovery where, as here, "the plaintiff ha[s] not made out a *prima facie* case for jurisdiction." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 255 (2d Cir. 2007) (citing *Jazini v. Nissan Motor Co.,* 148 F.3d 181, 186 (2d Cir. 1998)); *see Daou*, 42 F.4th at 133 (explaining that "a district court has wide latitude to determine the scope of discovery, and is typically within its discretion to deny jurisdictional discovery when the plaintiff has not made out a *prima facie* case for jurisdiction") (citing *Frontera Res. Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic*, 582 F.3d 393, 401 (2d Cir. 2009)). Moussaoui offers no basis for disregarding these precedents.

Moreover, the district court expressly found that jurisdictional discovery "would be futile" because the information sought by Moussaoui is irrelevant to the harm alleged for jurisdictional purposes. SPA-15. Here, Moussaoui seeks "bank records and documents" to establish

Defendants' "frequent[], systematic[], and intentional[] use" of their New York correspondent accounts. Appellant's Br. 23. But, as the District Court explained, "Moussaoui's inability to withdraw his funds in U.S. dollars was not caused by the defendants' possession of correspondent bank accounts in the United States, rather, the record shows that it was precipitated by the banking crisis and Lebanon's corresponding regulations within its banking sector." SPA-11. As we have explained, courts have consistently concluded that is insufficient to support personal jurisdiction.

In sum, the district court—like other courts presented with similar fact patterns[7]—acted well within its discretion when it dismissed for lack of personal jurisdiction without authorizing jurisdictional discovery, and this Court should affirm.

_____

[7] *See, e.g., Elghossain*, 2023 WL 6390160, at *13 (denying jurisdictional discovery and dismissing for lack of jurisdiction where "Plaintiffs' claims turn on the measures that [the bank] took in Lebanon to ensure that USD deposits remained in that country" and thus lack any "connection" to the correspondent accounts); *see also Khalife v. Audi Saradar Priv. Bank SAL*, 129 A.D.3d 468 (1st Dep't 2015) (recognizing that there is "no articulable nexus or substantial relationship" between "transactions executed through defendant bank's omnibus trading account with a U.S. bank account and the freezing of plaintiffs' bank accounts in Lebanon by defendant bank and the Lebanese authorities," and dismissing without jurisdictional discovery).

39

## IV. The District Court Did Not Abuse its Discretion by Denying Moussaoui's *Ex Parte* Motion for Attachment.

The district court did not err in denying Moussaoui's motion for an order of attachment under New York state law because Moussaoui failed to establish either a likelihood of success on the merits or a legitimate need for attachment. A-70–71.

To issue an order of attachment, a court must first find that jurisdiction may be properly exercised. Here, the district court did not address personal jurisdiction in its *ex parte* order denying an order of attachment. But, as we have explained, the exercise of jurisdiction does not comport with constitutional due process in this case, and there is thus no lawful basis for ordering attachment here. *See* SPA-9; *see also, e.g.*, *Chaar v. Arab Bank P.L.C.*, 220 A.D.3d 479, 480 (1st Dep't 2023) (upholding denial of attachment because "jurisdiction was lacking").[8]

---

[8] Further, as noted *supra* pp. 21–22, without an attachment in place, the court cannot exercise *quasi in rem* jurisdiction. *See* SPA-12 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 196 (1977)); *Manichaean Cap., LLC v. SourceHOV Holdings, Inc.,* 2021 WL 276674, at *2 (S.D.N.Y. Jan. 27, 2021) (citing *Concord Line Co. Ltd. v. Just Oil & Grain Pte Ltd.,* 2010 WL 2382414, at *2 (S.D.N.Y. June 14, 2010) ("[T]he entire concept of *quasi in rem* jurisdiction depends on property of a defendant being found and attached."); *Viacom Int'l, Inc. v. Melvin Simon Productions, Inc.,* 774 F. Supp. 858, 862-63 (S.D.N.Y. 1991) (same).

Even assuming that jurisdiction did exist (it does not), then the movant must "show, by affidavit and such other written evidence as may be submitted, that there is a cause of action, that it is probable that the plaintiff will succeed on the merits," and that one or more grounds for attachment provided in section 6201 exist. *Elsevier, Inc. v. Grossman*, 883 F. Supp. 2d 398, 399 (S.D.N.Y. 2012) (quoting N.Y.C.P.L.R. § 6212); *see 651 Bay St., LLC v. Discenza*, 189 A.D.3d 952, 953 (3d Dep't 2020) (same). "Because attachment is a harsh remedy," the New York statute "must be strictly construed in favor of those against whom it may be applied." *Silverman v. Miranda*, 116 F. Supp. 3d 289, 310 (S.D.N.Y. 2015) (quotation marks and citation omitted), *aff'd sub nom.*, 725 F. App'x 79 (2d Cir. 2018), *as amended* (June 7, 2018); *see Grafstein v Schwartz*, 100 A.D.3d 699, 699 (2d Dep't 2012). The movant "bears a heavy burden in attempting to establish its right to an attachment." *Skyline Steel, LLC v. PilePro*, LLC, 2015 WL 5076695, at *2 (S.D.N.Y. Aug. 27, 2015).

Moussaoui did not, and cannot, establish a likelihood of success on the merits. As the district court explained, Moussaoui failed to provide any evidence of "what the underlying agreements are as between Mr. Moussaoui and the bank concerning how the monies can or should be

used in Lebanon," or "whether the Lebanese banks have it within their authority, under Lebanese law or under the agreements with Mr. Moussaoui, to refuse to release U.S. dollars out of their accounts under particular circumstances." A-70-71 at 8:19–9:1. Moussaoui does not contest the district court's finding, offers no further support, and therefore waives any argument as to the likelihood of success for these purposes. *JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*, 412 F.3d 418, 428 (2d Cir. 2005). This Court may affirm the district court's ruling on Moussaoui's motion for attachment on that basis alone. *See Grafstein v. Schwartz*, 100 A.D.3d 699, 699 (2d Dep't 2012) (vacating order of attachment because plaintiff "failed to show a probability of success on the merits on his claims against that defendant").

Separately, Moussaoui was also required to demonstrate that attachment was necessary by submitting "evidence that [the Bank] lack[s] sufficient assets if a judgment is rendered against them" or that it "will choose to hide or otherwise dispose of [its] assets." *VisionChina Media, Inc. v. S'holder Representative Servs., LLC*, 109 A.D.3d 49, 61 (1st Dep't 2013). It is insufficient to show that attachment would be "helpful";

the "risk should be real, whether it is a defendant's financial position or past and present conduct." *Id.* at 60–61.

Once again, the district court correctly exercised its discretion in holding that Moussaoui failed to satisfy this requirement for attachment. Moussaoui's complaint contains "no evidence" that BBAC "is insolvent," nor did Moussaoui establish any risk that the Defendants would seek to avoid a potential judgment. A-66, A-71. And New York courts have been clear: "[W]ithout "evidence that the [defendants] lack sufficient assets, or that they will choose to hide or otherwise dispose of their assets" an order of attachment would be an abuse of discretion. *VisionChina Media Inc.*, 109 A.D.3d at 62.

Moussaoui now claims that "corruption and mismanagement of the commercial banks in Lebanon, make it likely that a judgment procured by plaintiff will be rendered useless without the attachment of BBAC's assets in its New York bank accounts." Appellant's Br. 29. Moussaoui's only citation for that proposition is a proffer from his own litigation counsel, who, in turn, based his opinion on hearsay, *i.e.*, "personal experiences Plaintiffs reported to your affiant personally," and unidentified "scholarly articles and government investigations." A-190 ¶

37. The unsubstantiated opinion of litigation counsel is, of course, not competent evidence that either BBAC or Assaf pose a risk of evading judgment. *See Gen. Textile Printing & Processing Corp. v. Expromtorg Intl. Corp.*, 862 F. Supp. 1070, 1074 (S.D.N.Y. 1994) (denying attachment given the lack of "probative evidentiary facts" showing efforts to dispose of property or flee the jurisdiction); *Frontier Dev. PLC v. Atari Interactive, Inc.*, 2017 WL 87178, at *4 (Sup. Ct. N.Y. Cnty. Jan. 06, 2017) ("Plaintiff's reliance on [party] affidavit statements, as opposed to the findings of an independent analyst or other evidentiary proof, does not sufficiently justify the extreme remedy of attachment.").

Last, Moussaoui argues that "BBAC is insolvent" and that "Mr. Hamadeh does not state in his Declaration that BBAC has adequate liquid USD in its possession and control to satisfy the $4,522,502.21 USD judgment that Plaintiff will obtain in his Lebanon Action." Appellant's Br. 28–29. These statements are directly contradicted by the record evidence. *See* A-624 ¶ 7 ("BBAC is solvent"); A-624 ¶ 9 ("BBAC also remains willing and ready to make payment to Plaintiff by transfer of USDs in his account to any other bank in Lebanon or by check drawn on the Central Bank of Lebanon consistent with local rules and

regulations."); A-624 ⁋ 10 ("Plaintiffs contention that BBAC lacks liquid USD to satisfy a judgment that may be obtained against BBAC in his Lebanon Action is also false."). Moussaoui's blatant misstatements and wholly unsubstantiated argument that BBAC made payments to various stakeholders (Appellant's Br. 27–29) do not advance his argument on appeal. The district court properly recognized Moussaoui's failure to demonstrate necessity.

For these reasons, this Court should affirm the district court's denial of Moussaoui's motion for attachment.

## V. The District Court's Judgment Should Be Affirmed.

The district court provided Moussaoui with an opportunity to replead and address "alleged deficiencies" in his original complaint, and he took advantage of this opportunity. A-86-87. Thereafter, in ruling on Moussaoui's amended complaint, the court determined that dismissal with prejudice was warranted. The district court's decision is well supported in these circumstances. *See, e.g.*, *Denny v. Barber,* 576 F.2d 465, 471 (2d Cir. 1978) (finding dismissal with prejudice appropriate where the plaintiff received notice of deficiencies in complaint at time of first amendment); *Tuff v Vil. of Yorkville Police Dep't*, 2017 WL 2790529,

at \*5 (N.D.N.Y. June 27, 2017) (dismissing amended complaint with prejudice after initial complaint was dismissed without prejudice); *Terio v Michaud*, 2011 WL 2610586, at \*2 (S.D.N.Y. June 15, 2011), *report and recommendation adopted*, 2011 WL 2610627 (S.D.N.Y. June 27, 2011) (dismissing with prejudice). Accordingly, this Court should affirm the district court's dismissal with prejudice.[9]

## CONCLUSION

For the foregoing reasons, this Court should affirm the denial of attachment and dismissal of this suit.

---

[9] Alternatively, this Court may affirm the district court's findings and modify the judgment to reflect that the dismissal is without prejudice. *See, e.g.*, *Smith v. United States*, 554 F. App'x 30, 32 (2d Cir. 2013) (remanding case with instruction to modify judgment for dismissal without prejudice).

Dated: April 19, 2024

/s/ *Samantha L. Chaifetz*
Samantha L. Chaifetz
**DLA Piper LLP (US)**
500 Eighth Street, NW
Washington, DC 20004
T: 202.799.4082
F: 202.799.5082

Neal F. Kronley
David A. Toner
**DLA Piper LLP (US)**
1251 Avenue of the Americas
New York, NY 10020
(212) 335 4500

*Counsel for Defendants-Appellees*
*Bank of Beirut and the Arab Countries,*
*also known as BBAC Bank S.A.L., and*
*Assaf Holding Company SAL*

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32 and Local Rule 32.1 because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), this brief contains 8,277 words.

This brief also complies with the typeface and style requirements of Federal Rule of Appellate Procedure 32 because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated: April 19, 2024

/s/ *Samantha L. Chaifetz*
Samantha L. Chaifetz

## CERTIFICATE OF SERVICE

I certify that on April 19, 2024, I served the foregoing Response Brief of Defendants-Appellees Bank of Beirut and the Arab Countries, also known as BBAC Bank S.A.L., and Assaf Holding Company SAL on all counsel via the Court's ECF system.

Dated: April 19, 2024

/s/ *Samantha L. Chaifetz*
Samantha Chaifetz